391 F.2d 764
 The WESTERN CASUALTY AND SURETY COMPANY, a foreign corporation, Appellant,
v.
John W. TEEL, Mabel C. Teel, George L. Lange, Eloise M. Lange, Leland M. Morton, Esther A. Morton, doing business as Teel Laundry and Dry Cleaning Company, Bonnie Gates, a Minor, and John Gates, Appellees.
John GATES, Appellant,
v.
The WESTERN CASUALTY AND SURETY COMPANY, a foreign corporation, and John W. Teel, Mabel C. Teel, George L. Lange, Eloise M. Lange, Leland M. Morton, Esther A. Morton, doing business as Teel Laundry and Dry Cleaning Company, Appellees.
 No. 9488.
 No. 9489.
 United States Court of Appeals Tenth Circuit.
 March 19, 1968.
 
 Richard Dan Wagner, Tulsa, Okl. (Alfred B. Knight, Tulsa, Okl., on the brief), for The Western Casualty and Surety Co.
 Jesse L. Leeds, Muskogee, Okl. (M. Dean Storts, Muskogee, Okl., on the brief), for Bonnie Gates, a Minor, and John Gates.
 Joe H. Kennedy, Muskogee, Okl. (Joe R. Kennedy, Muskogee, Okl., on the brief), for John W. Teel, Mabel C. Teel, George L. Lange, Eloise M. Lange, Leland M. Morton and Esther A. Morton, doing business as Teel Laundry and Dry Cleaning Co.
 Before MURRAH, Chief Judge, HILL, Circuit Judge, and CHRISTENSEN, District Judge.
 HILL, Circuit Judge.
 
 
 1
 These appeals concern the legal duty of appellant to defend, and its liability to pay any judgment procured, in an action arising from personal injuries received by appellee Bonnie Gates upon the premises of the other appellees.
 
 
 2
 Appellees, Teels, Langes and Mortons were engaged in business as Teel Laundry and Dry Cleaning Company. Appellant, Western Casualty & Surety Company, insured Teel Laundry with a General Comprehensive Liability policy excluding coverage for bodily injury "to an employee of the insured arising out of and in the course of his employment of the insured." Bonnie Gates, a minor, was injured while operating a freight elevator within the premises of Teel Laundry on September 14, 1965. Bonnie Gates instituted an action by her father and next friend, John Gates, in the District Court of Muskogee County, Oklahoma, against the Teels, Langes and Mortons, doing business as Teel Laundry and Dry Cleaning Company and these defendants demanded that appellant assume the defense of the action and protect their interest by reason of the above mentioned policy. Appellant initiated this federal Declaratory Judgment action to have its rights as insurer determined alleging that no obligation existed as the policy excluded bodily injury to an employee of the insured arising out of and in the course of his employment by the insured and that at the time of the injury Bonnie Gates was an employee of the insured Teel Laundry. The trial court found that Bonnie Gates was not an employee and that the accident was covered by the insurance policy issued by appellant. Appellant takes issue with this determination. An appeal was also taken by appellees Bonnie Gates and John Gates who sought in a motion for new trial to have the declaratory action dismissed on the grounds that the district court should not have assumed jurisdiction because there was pending in the state court an identical suit between identical parties.
 
 
 3
 The first issue considered is the denial of the motion for new trial on the grounds that the federal court should not have assumed jurisdiction of a matter when there was pending in the state court an action wherein the same issues would be raised. This argument is based upon the principle stated by this court in Franklin Life Insurance Co. v. Johnson, 10 Cir., 157 F.2d 653, that a federal court will generally not entertain jurisdiction in a declaratory action if the identical issues are involved in another pending proceeding.[1] Appellee Gates argues that because Western Casualty is an insurer of the Teel Laundry Company, defendant in the state court action, it is an interested party in that proceeding. This court in Duggins v. Hunt, 10 Cir., 323 F.2d 746, at 748, stated, "The questions of when to exercise jurisdiction, when to hold jurisdiction in abeyance, and when to reject jurisdiction are to be determined initially by the trial court, * * * and the judgment of the trial court will be reviewed by this court only to consider whether a clear abuse of discretion appears." It was also recognized by this court in Franklin Life Insurance Co. v. Johnson, supra, that courts should not be deterred from "giving full force and effect to the purpose of the Declaratory Judgment Act." In the instant case there was clearly no abuse by the trial court in refusing to grant appellee's motion. In Maryland Casualty Company v. Consumers Finance Service, Inc., 3 Cir., 101 F.2d 514, it was held that a trial court abused its discretion in refusing to exercise its jurisdiction in a case substantially the same as the instant case. The decision was based upon well recognized law that jurisdiction may not be refused merely on the ground that another remedy is available or because of the pendency of another suit if the controversy between the parties will not necessarily be determined in that suit. Since the issues raised by the insurer would not be determined in the state court suit by the injured party it was held to be an abuse of discretion not to hear the Federal Declaratory Judgment action. The fact that such issues might later arise in a garnishment action in the state courts does not mean that the federal courts should refuse to exercise its jurisdiction under the Declaratory Judgment Act. It was additionally recognized by this court in Franklin Life Insurance Co. v. Johnson, supra, that a declaratory action by an insurer to establish nonliability under casualty insurance was one of the prime purposes of the Declaratory Judgment Act. It should be further noted this issue was first raised on motion for new trial after trial had been held and the judgment entered. By invoking the principle asserted by appellee judicial proceedings would not be conserved but actually wasted. The potential interference with state proceedings would have to be extremely great to justify reversal of the trial court's decision to accept jurisdiction when the issue was not raised until after trial was completed. Certainly the facts of this case do not present such an extreme case.
 
 
 4
 The sole argument raised by appellant Western Casualty was that the insurance exclusion clause was unambiguous as determined by this court in Tri-State Casualty Insurance Co. v. Loper, 10 Cir., 204 F.2d 557, and that therefore its terms are to be understood in their plain, ordinary and popular sense, citing Order of United Commercial Travelers of America v. Edwards, 10 Cir., 51 F.2d 187. The issue in the instant case was whether Bonnie Gates was an employee of Teel Laundry. Appellee argues that the trial court failed to determine if Bonnie Gates was an employee as that term is understood in its plain, ordinary and popular sense, but instead feels that "The joinder of the case involving workmen's compensation may have caused the Trial Court to erroneously apply in this case a legal or technical meaning to the term `employee' as used in the Oklahoma Statutes involving child labor. * * * It is apparent that the Trial Court failed to distinguish between the compensation case and the one at bar, and applied to each the same definition of the term `employee.'" This assertion is based upon a statement made by the trial court at the conclusion of the trial when upon request of counsel the court made an oral statement of its probable decision. Therein the court stated, "Now everyone seems to feel that Bonnie Gates was an employee, at least in the non-legal or popular meaning of the word. If I understand correctly, or remember correctly, she herself in the state court action has assumed that position. But, I do not consider her an employee of the company in any way. I am of the opinion she was not an employee of the Teel Laundry in any sense of the word." This statement does not in any way support the position taken by appellant. It is patently clear that the trial court did not consider Bonnie Gates to be an employee in any sense of the use of that term, either in the plain and ordinary meaning or in the legal sense.[2] This is made further clear by the trial court's findings of facts, wherein the court states, "The Court finds that * * * Bonnie Gates, a minor, was not an employee of Teel Laundry and Dry Cleaning Company, either legal or illegal, and that the Court, from the evidence finds that Bonnie Gates, a minor, was not a legal or illegal or any type of employee of the defendant, Teel Laundry and Dry Cleaning Company and the owners of the said organization." Since the trial court did not find Bonnie Gates to be an employee in any sense of the word including the popular meaning of the term, the sole issue that remains is whether the evidence supports the findings of facts necessary for the court to make the conclusion that Bonnie Gates was not an employee.
 
 
 5
 The basic facts of Bonnie's relationship to Teel Laundry are not in dispute. These facts are that Bonnie's mother, Mrs. Eleanor Jane Gates, was a regular employee at Teel Laundry. During the summer preceding the accident Bonnie Gates and other children whose mothers were also employed at Teel Laundry, folded rags and towels at the Teel Laundry on a more or less irregular basis. No set hours for their folding work were made and reimbursement for this work was to the mothers on the basis of the number of towels folded by the children. The children were under no direct supervision and the folding work done by the children was also done by regular employees of the Teel Laundry. The trial court in its findings of fact No. 4 found "The court further finds that the presence of Bonnie Gates in said Teel Laundry and Dry Cleaning Company was shown by the evidence to be a practical way of maintaining employee relations with her mother the same as they did with other mothers under similar circumstances and was a method of controlling the children while in the plant by way of giving them something useful to do, by letting them and Bonnie Gates fold towels or rags and this was not done as an employee of Teel Laundry and Dry Cleaning Company and was not done as a part of an operation of steam laundry, dry cleaning and pressing and was not done with any machinery and was not a dangerous operation, * * and further that Bonnie Gates, a minor, was not an employee of Teel Laundry and Dry Cleaning Company and that she was not paid by Teel Laundry and Dry Cleaning Company even though extra money was added to the pay check of the mother for the folding of said towels and that in essence that Bonnie Gates was an employee of the mother, and the defendant, Teel Laundry and Dry Cleaning Company, did not see that the pay, that was added to the mother's check, was to go to said Bonnie Gates, but that this entire transaction was upon the agreement and under the direction of the mother of Bonnie Gates which made her in essence if she was anybody's employee, which this court doubts, an employee of her mother." This finding of fact concerning the relationship and intention of the parties concerning the relationship is not clearly erroneous.[3] From this basic factual relationship it is clear that the court's conclusion that Bonnie Gates was not an employee of the Teel Laundry and Dry Cleaning Company is correct and that therefore even if the employee exclusion clause of the insurance policy is construed as meaning employee in the commonest sense the trial court was correct in holding that Bonnie Gates was not excluded from coverage under this policy.
 
 
 6
 Although the above discussion is sufficient to affirm the trial court's decision it might give an impression of affirmance of appellant's position that the language of the employee exclusion clause of the insurance was to be interpreted as meaning an employee in any sense of the word. To place such an interpretation upon this phrase raises the possibility that a person might be found an employee sufficient to apply the exclusion clause of the public liability insurance and yet not sufficient to come within the meaning of employee for coverage under the Workmen's Compensation laws. That such a result would have been intended by the insured seems unlikely for it would mean that an area would exist for which he would not have any insurance coverage. There is no Oklahoma case dealing with the interpretation of the exclusion clause in question.[4] Other courts, however, have recognized the relationship between the employee exclusion from public liability policies and coverage under the Workmen's Compensation laws. It is stated in Vol. 12, Couch on Insurance 2d, § 44:483 "Where the distinction made by an employer's public liability policy is phrased so as to exclude `employees' that term is treated as the equivalent of a reference to those persons who are entitled to compensation under the workmen's compensation act." Also in Turnage v. State Farmers Mutual Tornado Insurance Co., Mo.App., 388 S.W.2d 342 at 346, the court states, "While the idea did not originate in this court, the Missouri courts (and those in some other states) have consistently turned to the Workmen's Compensation Act and the decisions thereunder in questions involving the meaning of the word `employee' as used in exclusion clauses of liability insurance policies. * * *" See also Weiss v. Employers' Liability Assur. Corp., 131 Misc. 301, 226 N.Y.S. 732; Shapiro v. Employers' Liability Assur. Corp., 139 Misc. 454, 248 N.Y.S. 587; and I-L Logging Co. v. Manufacturers & Wholesalers Indemnity Exchange, 202 Or. 277, 275 P.2d 226; and Lumber Mutual Casualty Insurance Co. v. Stukes, 4 Cir., 164 F.2d 571. This court in B & H Passmore Metal & Roofing Co. v. New Amsterdam Casualty Co., 10 Cir., 147 F. 2d 536, held that the phrase of an exclusion clause "engaged in business" is to be construed differently than the workmen's compensation phrase "arising out of and in the course of his employment" and, therefore, that the two coverages do not necessarily match. The case involved transportation given an employee after his work was over and during which time the court found that he was not an employee as intended by the employee exclusion clause although he might have been considered an employee under workmen's compensation laws. The Passmore decision, however, is not authority for holding that the instant employee exclusion clause is not to be construed in accordance with the Workmen's Compensation laws as a significant difference exists in the language of the two employee exclusion clauses. Great reliance was placed by this court in the Passmore decision upon the use of the words "engaged in business" whereas in the instant employee exclusion clause the phrase is "arising out of and in the course of his employment," the same phrase that is universally used in the Workmen's Compensation Statutes. This is, we believe, a clear expression of intent of the two parties that the employee exclusion clause as used in the public liability insurance is intended to correspond to the Workmen's Compensation coverage. The correct interpretation of the employee exclusion clause used in this case would be gained by considering whether Bonnie Gates was a legal employee as that term is construed under the Oklahoma Workmen's Compensation cases.
 
 
 7
 In Rock Island Coal Mining Co. v. Gilliam, 89 Okl. 49, 213 P. 833, the Oklahoma Supreme Court held that employment of minors which was illegal under the Child Labor Laws did not come within coverage under the Workmen's Compensation Statutes. The undisputed evidence in this case showed that Bonnie Gates was 13 years of age at the time she was working in the Teel Laundry, which was a steam laundry. 40 Okl.St. Ann. § 71 states, "No child under the age of 14 years shall be employed or permitted to work in any * * * steam laundry * * *." It is, therefore, clear that the district court was correct in saying that Bonnie Gates was not a legal employee and, therefore, construing the employee exclusion clause of the public liability insurance policy as corresponding to the Workmen's Compensation Statutes, Bonnie Gates should not be excluded from coverage under that policy. See New Amsterdam Casualty Co. v. Soileau, 5 Cir., 167 F.2d 767, and Scarpelli v. Travelers Indemnity Co., 7 Cir., 248 F.2d 791.
 
 
 8
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Brillhart v. Excess Ins. Co., 316 U.S. 491, 62 S.Ct. 1178, 86 L.Ed. 1620
 
 
 [2]
 Although not necessary to this decision, we question whether the statements made by the trial judge, informally, after the trial, may be relied on as the basis for reversal if they conflict with statements made in the findings of facts
 
 
 [3]
 The findings of fact was amply supported by the testimony of the following witnesses:
 George Lange, general manager of Teel Laundry:
 "Q. * * * Now Mr. Lange, you did not consider Bonnie Gates an employee?
 "A. No, sir.
 * * * * *
 "A. There was no, nothing required of this girl as far as attendance was concerned. We had no requirements in that respect. If she appeared there such work might be available in order to keep her out of the way she was permitted to do some.
 "Q. To your knowledge was any contract or agreement ever made between you or any representative of Teel Laundry for Bonnie to be employed there with her parents or with her?
 "A. No, sir.
 * * * * *
 "Q. Now, before you permitted some of these girls to fold did you have a problem at your plant with children of the mothers who were employed by you?
 "A. We had the problem that they were there waiting on their mothers to go home, or sometimes the mothers would bring them on a Saturday because they had no one to leave the child with at home.
 * * * * *
 "Q. Was it critical about them coming in the place without having something to do?
 "A. It was a problem, yes, sir, at times it was a problem."
 Leland Morton, laundry superintendent at Teel Laundry:
 "Q. Mr. Morton, I call your attention to a time approximately in the spring of 1965, and ask if you had any discussions with Mrs. Gates about the employment of Bonnie Gates at the laundry?
 "A. I discussed the matter of her bringing her daughter there not as an employee, I had no time for and at no time told her I could employ this Bonnie.
 * * * * *
 "Q. Did Mrs. Gates ever affirmatively ask you to employ Bonnie Gates?
 "A. She asked me on a number of occasions to let me bring her in, she didn't want to leave her alone at home.
 * * * * *
 "Q. Did she [Bonnie's mother] ever express any thought to the contrary she [Bonnie] was not an employee?
 "A. I specifically explained to women that brought their children there that I would not be responsible for them under any circumstances, and she agreed to that."
 
 
 [4]
 Subdivision E under Exclusion states, "Under coverage A, to any obligation for which the insured or any carrier as his insurer, may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;" Subdivision F states, "Under coverage A, except with respect to liability assumed by the insured under a contract as defined herein, the bodily injury to any employee of the insured arising out of and in the course of his employment by the insured other than a domestic employee whose injury arises out of an automobile covered by this policy and for whose injury benefits in whole or in part are not payable are required to be provided under any workmen's compensation law; * * *."