**Elmer M. KUNKEL, William H. Dennler, John D. Lockton, Ted B. Westfall and William D. Robertson, Plaintiffs–Appellees,**

v.

**CONTINENTAL CASUALTY COMPANY, Defendant–Appellant.**

No. 86–1662.

United States Court of Appeals, Tenth Circuit.

Jan. 30, 1989.

Peter Van N. Lockwood, of Caplin & Drysdale, Chartered, Washington, D.C. (Joseph R. Roberts, of Rhodes, Hieronymus, Jones, Tucker & Gable, William H. Hinkle, of Doerner, Stuart, Saunders, Daniel & Anderson, Tulsa, Okl., William A. Wineberg, of Broad, Schulz, Larson & Wineberg, San Francisco, Cal., and Elihu Inselbuch, New York City, with him on the brief), for plaintiffs-appellees.

D. Kendall Griffith (Thomas M. Hamilton, David H. Levitt and Joshua G. Vincent with him on the brief), of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for defendant-appellant.

Before ANDERSON and BALDOCK, Circuit Judges and PARKER, District Judge.*

BALDOCK, Circuit Judge.

The question presented in this case is whether the district court properly exercised jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201, in an accountant's suit seeking a declaration as to the amount of coverage provided by his malpractice insurance policy, where the existence of coverage remains dependent upon (1) the outcome of a collateral action charging the accountant with securities law violations and (2) a determination that any liability he incurs is not excepted from the terms of the policy. We affirm.

## I.

In February 1964, defendant-appellant, Continental Casualty Company (Continental), issued an Accountants' Professional Liability Policy to the accounting firm of Kunkel & Co. The policy, which was effective through January 1967, named plaintiff-appellee, Elmer Kunkel (Kunkel) an insured. Among other things, the policy as amended limited Continental's potential liability for Kunkel's acts and omissions to "$40,000 Each Claim." The policy, however, excluded liability arising out of "any dishonest, fraudulent, criminal or malicious act or omission" on the part of the insured.

Beginning in 1973, Kunkel became a defendant in various class action lawsuits charging him and related parties with federal securities law violations. According to the allegations, Kunkel disregarded and failed to disclose material facts in preparing audit reports, registration statements and prospectuses for three security offerings by Home–Stake Production Company, an oil and gas concern. It is alleged that Kunkel's conduct renders him liable to investors in Home–Stake's 1964, 1965 and 1966 drilling projects. The actions were consolidated in the United States District Court for the Northern District of Oklahoma under *Home–Stake Prod. Co. Sec. Litig.*, M.D.L. 153 (1974) (Home–Stake litigation).

Kunkel tendered the defense of the lawsuits to Continental in July 1974, and again in October 1976. Finally, after the filing of the second amended complaint, Continental sent a reservation of rights letter to Kunkel in April 1980, offering to pay for his defense in the Home–Stake litigation. The letter provided:

---

* Honorable James A. Parker, United States District Judge for the District of New Mexico, sitting by designation.

The charges made against you in the Second Amended Complaint allege violations of the anti-fraud and other provisions of the federal securities law, as well as charges of conspiracy.... This reservation of rights pertains to the allegations of fraud and intentional misconduct made against you by all Plaintiff class and sub-class members in the Second Amended Complaint for the reason that the coverage agreement contained in your insurance policy specifically excludes coverage for "any dishonest, fraudulent, criminal or malicious act or omission of the insured."

Because of the opinion of Continental Casualty Company that there may be no coverage extended for you under the Continental Policy ... Continental Casualty Company will not designate an attorney to represent you pursuant to this letter, but request that you designate an attorney of your own choice to represent you.... Continental Casualty Company agrees to pay reasonable attorney's fees and expenses incurred after the filing of the Second Amended Complaint....

During the course of pretrial proceedings and settlement negotiations, a dispute arose between Continental and the class action plaintiffs over the limits of liability contained in the insurance policy. Continental asserted the language "$40,000 Each Claim" limited Kunkel's coverage to $40,000 for each of the three security offerings, or $120,000. Plaintiffs and Kunkel disagreed. Because the policy placed no aggregate limit on the amount of coverage, they contended that each class member's grievance constituted a separate "claim" within the meaning of the contract.

With settlement negotiations at an impasse, Kunkel instituted this diversity action pursuant to 28 U.S.C. § 1332 against Continental in the Northern District of Oklahoma in February 1984.[1] Count I of the complaint sought a declaration that the insurance policy covered the claims asserted against Kunkel in the Home–Stake litigation, while count II sought a declaration that the limits of liability extended to $40,000 for each claim propounded by the individual investors in the Home–Stake projects.[2]

■ By agreement of the parties, the district court on January 21, 1985, stayed proceedings on count I pending the resolution of factual questions in the Home–Stake litigation which related to the coverage issue. Count II, however, became the subject of cross motions for summary judgment. During the hearing on the motions, Continental not only contested the merits of count II, but also argued that count II failed to present a justiciable controversy because Kunkel had not been held liable in the Home–Stake litigation and no determination had been made that the policy covered the class members' claims against Kunkel. On August 9, 1985, the district court resolved both issues in favor of Kunkel holding that (1) an actual controversy existed between the parties and (2) the aggregate limit of the policy was $40,000 multiplied by the number of individual claims against Kunkel. Over Continental's objection, the court granted Kunkel's motion to voluntarily dismiss count I on August 27. Continental appeals, challenging only the district court's exercise of jurisdiction over count II. Our jurisdiction to review this matter arises under 28 U.S.C. § 1291.[3]

1. Kunkel also joined as defendants the named plaintiffs in the Home–Stake litigation in order to bind them to any adverse decision as to Continental's obligations under the policy. The district court subsequently realigned them as plaintiffs in this suit so that their positions conformed to their real interests. *See Farmers Alliance Mut. Ins. Co. v. Jones,* 570 F.2d 1384, 1387 (10th Cir.), *cert. denied,* 439 U.S. 826, 99 S.Ct. 97, 58 L.Ed.2d 119 (1978) (in diversity suit, court should scrutinize parties' interests to determine if their positions as plaintiffs and defendants conform to their real interests).

2. A third count alleging Continental's duty to defend the Home–Stake litigation and reimburse Kunkel for costs and fees previously incurred was settled and dismissed.

3. As a jurisdictional matter, we initially note that the district court failed to enter a "final judgment" on a separate document as required by Fed.R.Civ.P. 58. Nevertheless, the circuit court has jurisdiction of "final decisions" of the district court under 28 U.S.C. § 1291. If no question exists as to the finality of the district court's decision, the absence of a Rule 58 judgment will not prohibit appellate review. *Bank-*

## II.

The starting point for our discussion must be the relevant language of the Declaratory Judgment Act: *"In a case of actual controversy* within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, *may declare* the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201 (emphasis added). As is evident from its wording, the Act embraces both constitutional and prudential concerns.

■ Recognizing that under our Constitution the federal judicial power extends only to "cases" or "controversies," U.S. Const. art. III, § 2, Congress confined the declaratory remedy "to cases of actual controversy." *United States v. Fisher-Otis Co., Inc.,* 496 F.2d 1146 (10th Cir.1974). Because the word "actual" has been construed as providing emphasis rather than definition, the operation of the Act is procedural only. The Act merely provides a procedure empowering a federal court to declare the legal rights and obligations of adversaries engaged in a justiciable controversy. *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937).

■ But the existence of a "case" in the constitutional sense does not confer upon a litigant an absolute right to a declaratory judgment. *Green v. Mansour,* 474 U.S. 64, 72, 106 S.Ct. 423, 428, 88 L.Ed.2d 371 (1985). "The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Public Affairs Assoc., Inc. v. Rickover,* 369 U.S. 111, 112, 82 S.Ct. 580, 582, 7 L.Ed.2d 604 (1962). Whether to entertain a justiciable declaratory judgment action is a matter committed to the sound discretion of the

trial court. *Alabama State Fed'n of Labor v. McAdory,* 325 U.S. 450, 462, 65 S.Ct. 1384, 1390, 89 L.Ed. 1725 (1945).

■ Therefore, our inquiry is two-fold. A determination of the district court's subject matter jurisdiction is a question of law reviewable *de novo* on appeal. *Walden v. Bartlett,* 840 F.2d 771, 772–73 (10th Cir. 1988). The decision of the district court to affirmatively exercise its discretion and issue a declaration under the Act in the presence of jurisdiction, however, will not be overturned absent a showing of clear abuse of that discretion. *Farmers Alliance Mut. Ins. Co. v. Jones,* 570 F.2d 1384, 1386 (10th Cir.), *cert. denied,* 439 U.S. 826, 99 S.Ct. 97, 58 L.Ed.2d 119 (1978); *Western Casualty and Surety Co. v. Teel,* 391 F.2d 764, 766 (10th Cir.1968). *Contra Tempco Elec. Heater Corp. v. Omega Eng'r, Inc.,* 819 F.2d 746, 747–49 (7th Cir.1987) (decision to grant declaratory relief reviewable *de novo* ).

### A.

The rule prohibiting federal courts from rendering advisory opinions was first enunciated in 1793 when the Supreme Court refused to answer questions of international law submitted to Chief Justice Jay by Secretary of State Jefferson on behalf of President Washington. 3 *Correspondence and Public Papers of John Jay,* 488–89 (1890). Since then, the Court has sought on numerous occasions to delineate factors which separate a "case" or "controversy" from a dispute that is hypothetical, abstract or academic in character.

■ Construing the Declaratory Judgment Act in *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937), the Court stated: "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy

ers Trust Co. v. Mallis, 435 U.S. 381, 382–88, 98 S.Ct. 1117, 1118–21, 55 L.Ed.2d 357 (1978); *Stubbs v. United States,* 620 F.2d 775, 776 n. 1 (10th Cir.1980); *see also Soo Line R.R. Co. v. Escanaba & Lake Superior R.R. Co.,* 840 F.2d 546, 549 (7th Cir.1988) (unless the circuit court

is "to become a citadel of technicality" noncompliance with Rule 58 does not *per se* obstruct appellate jurisdiction). In this instance the district court has disposed of each count in the complaint. Thus, we may properly exercise jurisdiction over this appeal.

admitting of specific relief through a decree of a conclusive character...." *Accord Blinder, Robinson & Co., Inc. v. United States Sec. and Exch. Comm'n,* 748 F.2d 1415, 1418 (10th Cir.1984), *cert. denied,* 471 U.S. 1125, 105 S.Ct. 2655, 86 L.Ed.2d 272 (1985). The declaration of rights, however, need not include injunctive or monetary relief. *Aetna Life,* 300 U.S. at 241, 57 S.Ct. at 464. Nor need the relief granted entirely dispose of the matter. A request for relief under the Act may be limited. Further necessary and proper relief based upon factual disputes not yet resolved may be sought at a later time. 28 U.S.C. §§ 2201–02; *United States v. Fisher–Otis Co., Inc.,* 496 F.2d 1146, 1149 (10th Cir.1974).

In *Maryland Casualty Co. v. Pacific Oil & Coal Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941), the Court recognized that the distinction between an abstract question and a "controversy" was blurred. To fashion a "precise test" for determining in every instance the presence of a controversy was impossible. Instead, the test is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* Even the existence of contingencies did not prohibit the Court from issuing a declaratory judgment in that case, for it decided that an insurer's lawsuit against an injured third party was justiciable although any claim the latter might have against the insurer depended upon (1) his obtaining a final judgment in state court against the insured, and (2) the insured's failure to personally satisfy the judgment.

Relying on *Maryland Casualty,* we recently held in *Allendale Mut. Ins. Co. v. Kaiser Eng'rs,* 804 F.2d 592 (10th Cir. 1986), *cert. denied,* 482 U.S. 914, 107 S.Ct. 3185, 96 L.Ed.2d 674 (1987), that an insurer's action against third-party tortfeasors under the Act presented an actual controversy. In *Allendale,* the insurer sought a declaration that *if* held liable to the insured, it would be entitled to judgment against the tortfeasors. We explained:

"The contingent nature of the right or obligation in controversy will not bar a litigant from seeking declaratory relief when the circumstances reveal a need for a present adjudication." *Id.* at 594; *accord Keene Corp. v. Insurance Co. of North America,* 667 F.2d 1034, 1039–40 (D.C.Cir.1981), *cert. denied,* 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982).

Despite *Maryland Casualty* and its progeny, Continental asserts that the district court's construction of the insurance policy at this stage of the Home–Stake litigation is meaningless. Continental claims that a construction of the policy's limits of liability will serve a useful purpose only if Kunkel is held liable to the class members and the policy's terms are interpreted to cover his liability. Until then, count II according to Continental presents nothing more than an abstract question dependent upon hypothetical facts. We disagree.

■ "Advance expressions of legal judgment upon issues which remain unfocused" are impermissible. *United States v. Fruehauf,* 365 U.S. 146, 157, 81 S.Ct. 547, 554, 5 L.Ed.2d 476 (1961). Issues which will likely never come to pass should remain undecided. But to conclude that Continental and Kunkel are not embattled in a hostile assertion of rights within constitutional boundaries would unduly restrict the application of Article III. The Declaratory Judgment Act "contemplates a pragmatic approach to the determination of legal relations in controversy between interested parties." *St. Paul Fire and Marine Ins. Co. v. Aetna Casualty and Surety Co.,* 357 F.2d 315, 316 (10th Cir.1966); *accord* Fed.R.Civ.P. 57 (advisory committee's notes) (petitioner must have a practical interest in the declaration sought). The Act enables parties uncertain of their legal rights to seek a declaration of rights prior to injury. S.Rep. No. 1916, 83rd Cong., 2d Sess. 1, *reprinted in* 1954 U.S.Code Cong. & Admin.News 3389.

■ Certainly a situation may be hypothesized where the number of contingencies or the improbability of their occurrence is

so great that a court would be powerless to render a decision. *See National R.R. Passenger Corp. v. Consolidated Rail Corp.*, 670 F.Supp. 424, 429–30 (D.D.C.1987). But this is not the situation in the case before us. That an actual controversy exists between Continental and Kunkel is clear. Count II of Kunkel's complaint alleges a dispute which is definite and real rather than hypothetical. That dispute relates to Continental's rights and obligations arising from its contract of insurance with Kunkel. Because of the parties' adverse positions with respect to Continental's obligations, settlement of the Home–Stake litigation prior to a conclusive resolution of count II is a virtual impossibility.

An insurance policy encompasses the insurer's duty to exercise diligence and good faith in attempting to settle claims against its insured. *Insurance Co. of North America v. Medical Protective Co.*, 768 F.2d 315, 321 (10th Cir.1985). Moreover, an insurer has a "very great duty" to settle within the limits of the policy. *Hazelrigg v. American Fidelity & Casualty Co.*, 241 F.2d 871, 873 (10th Cir. 1957). In evaluating the merits of the litigation, an insurer is bound to consider its potential exposure. But Continental is incapable of doing so until it knows the possible extent of its liability in the Home–Stake litigation. The District of Columbia Circuit aptly stated:

> If insurance provided only a right to reimbursement for final judgments entered against the insured, a finding of ripeness might be difficult on the facts of this case. But the policies' protections are considerably broader, including a right to the insurer's provision of a defense and active participation in settlement. An insurer's disclaimer of duty to pay, or reservation of rights, undercuts both of these duties.

*Rubins Contractors, Inc. v. Lumbermens Mut. Ins. Co.*, 821 F.2d 671, 674 (D.C.Cir.

1987). The Third Circuit agrees: "It would turn the reality of the claims adjustment process on its head to hinge justiciability of an insurance agreement on the maturation of a suit to a judgment when the overwhelming number of disputes are resolved by settlement." *ACandS, Inc. v. Aetna Casualty and Surety Co.*, 666 F.2d 819, 823 (3d Cir.1981).

The dispute over the meaning of "40,000 Each Claim" can only add uncertainty to a settlement process where certainty is sought. A declaration on count II might very well affect both parties' settlement strategy. To overturn the district court's ruling would hinder any hope of such a result. Admittedly, some uncertainty remains regarding whether the policy's fraud exclusion will deny Kunkel coverage for any liability he incurs. This alone, however, did not render the district court powerless to resolve a second element of uncertainty. Rather, whether to rule on count II in this situation was a matter committed to the sound discretion of the trial court. Issues of contract construction arising out of a justiciable controversy—in this instance the Home–Stake litigation—are themselves justiciable and may be considered by the federal courts. *See id.* at 822.

## B.

Federal courts as a general rule cite Borchard's treatise on declaratory judgments in deciding the propriety of declaratory relief. *See, e.g., Delaney v. Carter Oil Co.*, 174 F.2d 314, 317 (10th Cir.), *cert. denied*, 338 U.S. 824, 70 S.Ct. 71, 94 L.Ed. 501 (1949). Accordingly, a court in the exercise of its discretion should declare the parties' rights and obligations when the judgment will (1) clarify or settle the legal relations in issue and (2) terminate or afford relief from the uncertainty giving rise to the proceeding. E. Borchard, *Declaratory Judgments* 299 (2d ed.1941).[4]

---

**4.** *Accord Central Montana Elec. Power Coop., Inc. v. Administrator of Bonneville Power Admin.*, 840 F.2d 1472, 1475 n. 1 (9th Cir.1988); *Tempco Elec. Heater Corp. v. Omega Eng'r*, 819 F.2d 746, 749 (7th Cir.1987); *Fort Howard Paper Co. v. William D. Witter, Inc.*, 787 F.2d 784, 790

(2d Cir.1986); *Metropolitan Prop. and Liab. Ins. Co. v. Kirkwood*, 729 F.2d 61, 62 (1st Cir.1984); *Tierney v. Schweiker*, 718 F.2d 449, 456 (D.C.Cir. 1983). The Sixth Circuit has refined the applicable considerations into a framework encompassing five factors, none of which would serve

That the district court's construction of Kunkel's policy limits clarifies the parties' legal relations and affords relief from the uncertainty surrounding Continental's obligations is beyond doubt. Whether the declaration will expedite a resolution of the underlying dispute is less clear. But it certainly eliminates a factor which served only to undermine Continental's duty to assess the Home–Stake litigation and engage in good faith settlement negotiations.

While the continuing existence of the coverage dispute described in count I prohibits a final and conclusive determination of Continental's duties, that issue properly awaits the conclusion of the Home–Stake litigation. Although Continental has not appealed the district court's dismissal of count I and the record in the Home–Stake litigation is not before us, both Kunkel and Continental have represented to the district court in this case that the jury's findings will bear directly on the applicability of the fraud exclusion. Thus, it would be a complete waste of judicial resources for the trial judge in this instance to proceed on count I, with the attending discovery and other trial preparations, when a suit involving similar issues has been pending for fifteen years.

A federal court generally should not entertain a declaratory judgment action over which it has jurisdiction if the same fact-dependent issues are likely to be decided in another pending proceeding. *See Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 495, 62 S.Ct. 1173, 1175–76, 86 L.Ed. 1620 (1942); *Western Casualty and Surety Co. v. Teel,* 391 F.2d 764, 766 (10th Cir.1968). But nothing in the Declaratory Judgment Act prohibits a court from deciding a purely legal question of contract interpretation which arises in the context of a justiciable controversy presenting other factual issues. The Act specifically states that the court "may declare the rights and

other legal relations of any interested party seeking such declaration, *whether or not further relief is or could be sought.*" 28 U.S.C. § 2201 (emphasis added). We recognized in *United States v. Fisher–Otis Co., Inc.,* 496 F.2d 1146, 1149 (10th Cir. 1974) that "[a] request for relief may be so limited under the Declaratory Judgment Act, and any further necessary and proper relief based upon the declaratory judgment and any additional facts which might be necessary to support such relief can be sought at a later time." Mindful of these precepts, we conclude that the district court properly adjudged count II of Kunkel's complaint.

AFFIRMED.

---

to bar declaratory relief in this instance: (1) whether the declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for

*res judicata;*" (4) whether use of a declaratory action would increase friction between federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective. *Allstate Ins. Co. v. Green,* 825 F.2d 1061, 1063 (6th Cir.1987).