BALDOCK, Circuit Judge.
Pursuant to its taxing power under Colo. Const, art. X, the Colorado legislature has enacted procedures for the taxation of personal property within the State. Colo.Rev. Stat. §§ 39-1-101 to 39-2-131 (1994). Colorado law generally exempts from taxation the value of intangible personal property including computer software. Id. § 39-3-118. Colorado law, however, does not exempt from taxation the value of intangible personal property owned by public utilities. Id. § 39-22-611. For property tax purposes, Colorado law defines a public utility as any “railroad company, airline company, electric company, rural electric company, telephone company, telegraph company, gas company, gas pipeline carrier company, domestic water company ..., pipeline company, coal slurry pipeline, or private car line company.” Id. § 39-4-101(3). Section 306 of the Railroad Revitalization and Regulatory Reform Act of 1976 (4 — R Act) proscribes certain forms of state taxation deemed to unreasonably burden rail carriers engaged in interstate commerce. The issue presented is whether the Defendant Colorado Property Tax Administrator’s refusal to exempt the value of the Plaintiff Burlington Northern Railroad’s computer software from taxation constitutes tax discrimination under § 306 of the 4-R Act. Under the unique procedural posture of this case, we hold that it does. We therefore uphold the district court’s judgment permanently enjoining Defendant from assessing an ad valorem tax against the value of Plaintiff’s computer software.
I.
Under Colo.Rev.Stat. §§ 39-J-101 & 106 (1994), Defendant annually assesses Plaintiff’s rail transportation property for ad valo-rem tax purposes. Defendant bases the assessment on the value of Plaintiffs rail transportation property located within the State of Colorado. Defendant apportions the assessed value of the property among the State’s various counties. The counties thereafter apply a tax levy and collect taxes from Plaintiff.
In 1994, Plaintiff requested a tax exemption based upon the value of its computer software. Defendant denied Plaintiff’s request. Plaintiff then instituted this action in the district court seeking declaratory and *1415 injunctive relief under § 306(l)(d) of the 4-R Act.[1]
Section 306(l)(d) prohibits a state from levying “another tax that discriminates against a rail carrier” engaged in interstate commerce. According to the complaint, the “imposition of a property tax on the value of [Plaintiffs] intangible computer software, where the computer software of other commercial and industrial taxpayers in Colorado is not taxed, results in discriminatory treatment of a common carrier by rail in violation of Section 306(l)(d).” Plaintiff alleged the value of its computer software located in the State of Colorado was at least $8,000,000, which entitled Plaintiff to a property tax deduction of at least $2,250,000. Defendant did not dispute Plaintiffs factual allegations, and never submitted an answer to the complaint. Rather, Defendant filed a motion to dismiss which disputed only as a matter of law Plaintiffs conclusion that the failure to exempt the value of Plaintiffs computer software from the property tax assessment constituted tax discrimination in violation of the 4 — R Act. According to the Defendant, § 306 would not afford Plaintiff relief under any set of facts because in Department of Revenue of Oregon v. ACF Industries, Inc., 510 U.S. 332, 114 S.Ct. 843, 127 L.Ed.2d 165 (1994), the Supreme Court held that the 4r-R Act did not apply to tax exemptions. Thereafter, Plaintiff filed a motion for a preliminary injunction seeking to enjoin Defendant from collecting the disputed tax. The parties agreed that the amount of disputed tax totaled $184,-767.89. Plaintiff deposited that amount in the district court’s registry pending resolution of the case.
Aside from the allegations of the complaint, at no time did either party seek to introduce any factual evidence tending to establish or negate the alleged discriminatory effect of the State of Colorado’s intangible property tax exemption. By failing to submit an answer or other pleading denying the factual allegations of Plaintiffs complaint, Defendant admitted those allegations, thus placing no further burden upon Plaintiff to prove its case factually. Fed.R.Civ.P. 8(d) (“Averments in a pleading to which a responsive pleading is required ... are admitted when not denied in the responsive pleading.”). Defendant certainly would have been entitled to file an answer upon the district court’s denial of the motion to dismiss, Fed. R.Civ.P. 12(a)(4)(A), but chose not to. Instead, the parties’ requested the court to decide the case as a matter of law on the record they presented. The court entered an order “permanently” enjoining Defendant from assessing a tax based on the value of Plaintiffs computer software.[2] The court reasoned that because Defendant excluded only public utilities as an “isolated and targeted group” from the State’s general ex *1416 emption on intangible property, the tax Defendant imposed upon the value of Plaintiffs computer software was discriminatory in violation of § 306(l)(d). Defendant appealed. Our jurisdiction arises under 28 U.S.C. § 1291. We review questions of law turning on the interpretation and application of a federal statute de novo. Dikeman v. National Educators, Inc., 81 F.3d 949, 951 (10th Cir.1996). We affirm.[3]
II.
Prior to 1994, Defendant exempted the value of Plaintiffs computer software from Plaintiffs property tax assessment because Defendant believed § 306(l)(d) of the 4-R Act mandated the exemption. In January 1994, however, the Supreme Court decided Department of Revenue of Oregon v. ACF Industries, Inc., 510 U.S. 332, 114 S.Ct. 843, 127 L.Ed.2d 165 (1994). Since ACF, Defendant has asserted that the State of Colorado lawfully may deny public utilities, including Plaintiff, the general exemption for intangible property.
In ACF, the Supreme Court addressed the issue of whether the State of Oregon violated § 306(l)(d) of the 4-R Act “by imposing an ad valorem tax upon railroad property while exempting various other, but not all, classes of commercial and industrial property.” Id. at 335, 114 S.Ct. at 846 (emphasis added). In that case, Oregon imposed an ad valorem tax upon all real and personal property within its jurisdiction, except property granted an express exemption. Various classes of business personal property were exempt, including agricultural machinery and equipment; nonfarm business inventories; livestock; poultry; bees; fur-bearing animals; and agricultural products in the possession of farmers. ACF, 510 U.S. at 335, 114 S.Ct. at 846 . Companies which leased railroad cars to railroads and shippers claimed that the tax constituted “another tax that discriminates against a rail carrier,” in violation of § 306(l)(d), because the state exempted certain classes of commercial and industrial property, but taxed railroad cars in full. Id. at 337, 114 S.Ct. at 847.
The Court held that “a State may grant exemptions from a generally applicable ad valorem property tax without subjecting the taxation of railroad property to challenge under the relevant provision of the 4-R Act, § 306(l)(d)....” Id. at 335, 114 S.Ct. at 846. Interpreting the 4-R Act as a whole, the Court concluded that railroads may not challenge property tax exemptions to a generally applicable ad valorem property tax under § 306. Id. at 342-44, 114 S.Ct. at 849-50. That, Defendant claims, should be the end of our inquiry, and necessarily, Plaintiffs challenge to the State of Colorado’s intangible property tax exemption for all commercial and industrial taxpayers other than public utilities must fail.
The Court recognized, however, that ACF was “not a case in which the railroads— either alone or as part of some isolated and targeted group — are the only commercial entities subject to an ad valorem tax.” Id. at 346, 114 S.Ct. at 851. The Court explained that “[i]f such a case were to arise, it might be incorrect to say that the State ‘exempted’ the nontaxed property. Rather, one could say that the State had singled out railroad property for discriminatory treatment.” Id. at 346, 114 S.Ct. at 852. Relying on this language, Plaintiff claims that the State of Colorado has unlawfully “isolated and targeted” railroads and other public utilities as a group, and subjected them to an intangible personal property tax, from which all other commercial and industrial taxpayers within the State are “exempt.”
*1417 III.
Given the Supreme Court’s qualifying language in ACF that state tax “exemptions” denied to an “isolated and targeted group,” might violate § 306(l)(d), we reject Defendant’s assertion that no “property tax exemption,” regardless of its nature or effect, is subject to challenge under § 306. Otherwise, states could circumvent § 306 simply by enacting a tax of “general application,” and then “exempting” from the tax all but a certain class of taxpayers, which, as the Court noted in ACF, is really not an “exemption” at all, but a singling out of certain taxpayers for discriminatory treatment. ACF, 510 U.S. at 346, 114 S.Ct. at 851 (“‘term “exemption” does not mean every exclusion from the reach of a levy5 ”) (quoting J. Hellerstein & W. Hellerstein, State and Local Taxation 973 (5th ed. 1988)). We therefore apply ACF and construe the validity of Colorado’s intangible property tax exemption.
Construing § 306 in its entirety, the Court in ACF inferred that the proper comparison class in analyzing whether a tax discriminates against a railroad in violation of § 306(l)(d), is “other commercial and industrial taxpayers”. ACF, 510 U.S. at 336-38, 114 S.Ct. at 846-49; see also Atchison, Topeka and Santa Fe Railway Co. v. State of Arizona, 78 F.3d 438, 441-42 (9th Cir.1996) (holding that proper comparison class under § 306(l)(d) is “other commercial and industrial taxpayers.”); Kansas City Southern Railway Co. v. McNamara, 817 F.2d 368, 375 (5th Cir.1987) (same). The 4-R Act defines “commercial and industrial property” as “property, other than transportation property and land used primarily for agricultural purposes or timber growing, devoted to a commercial or industrial use_” 49 U.S.C. § 11503(a)(4). Both subsections (l)(a) and (l)(e) of § 306 establish a comparison class of “commercial and industrial property,” and we can think of no sound reason why Congress did not intend the same class to be used in analyzing discrimination claims under subsection (l)(d). See ACF, 510 U.S. at 340, 114 S.Ct. at 848 (interplay between subsections (l)(a) and (l)(c), and the 4-R Act’s definition of “commercial and industrial property” “central” to the construction of subsection (l)(d)).
Unlike the tax exemption at issue in ACF, Colorado’s intangible property tax exemption applies to all commercial and industrial taxpayers other than “public utilities.” In ACF, most taxpayers in the comparison class were subject to the disputed tax. A large portion of the property exempted was agricultural, which does not fall within the 4-R Act’s definition of commercial and industrial property. But in this case, Colorado imposes an intangible property tax only upon a narrow group of taxpayers, consisting of interstate interests. Such interests, Congress and the Court have noted, are “ ‘easy prey for State and local tax assessors’ in that they are ‘nonvoting, often nonresident, targets for local taxation,’ who cannot easily remove themselves from the locality.” Western Air Lines, Inc. v. Board of Equalization, 480 U.S. 123, 131, 107 S.Ct. 1038, 1043, 94 L.Ed.2d 112 (1987) (quoting S.Rep. No. 91-630, p. 3 (1969)). Accordingly we hold that Colorado’s intangible property tax exemption singles out Plaintiff as part of an “isolated and targeted group” for discriminatory tax treatment in violation of § 306(l)(d) of the 4-R Act, as interpreted by the Supreme Court in ACF. Defendant is permanently enjoined from assessing an ad valorem tax against the value of Plaintiffs computer software.
AFFIRMED.

. Section 306(1), codified at 49 U.S.C. § 11503(b), states:
(1) The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:
(a) assess rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property.
(b) levy or collect a tax on an assessment that may not be made under clause (a) of this subsection.
(c) levy or collect an ad valorem property tax on rail transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction.
(d) impose another tax that discriminates against a rail carrier ... [engaged in interstate commerce].

. The dissent argues that Plaintiff failed to prove its case. Of course, if Defendant had denied the factual allegations of the complaint and required Plaintiff to prove that the failure to grant Plaintiff the property tax exemption had a discriminatory effect in violation of § 306(l)(d), then we might have a different situation. But the Defendant "put all its eggs in one basket,” arguing only that under ACF, 510 U.S. at 332, property tax exemptions were not subject to challenge under § 306(l)(d). Thus, “what sort of proof the railroad must present and what rebuttals or defenses are available to the taxing authority are questions for another day.” Burlington Northern Railroad Co. v. City of Superior, 932 F.2d 1185, 1188 (7th Cir.1991). In any event, even if Defendant had required Plaintiff to meet its burden of proof, the most that can be said is Plaintiff has not proven its case as a matter of law. Plaintiff presumably would still be permitted to engage in discovery, and, if a genuine dispute of material fact existed, proceed to trial, and given the opportunity to prove its case as a matter of fact.

. As a jurisdictional matter, we note that the district court in this case failed to enter a “final judgment” on a separate document as required by Fed.R.Civ.P. 58. To eliminate uncertainty as to the finality of district court decisions and ease appellate jurisdictional review, we encourage all district courts to comply with Rule 58’s separate document requirement in every proper instance. Nevertheless, the circuit court has jurisdiction of “final decisions” of the district court under 28 U.S.C. § 1291. If no question exists as to the finality of the district court's decision, the absence of a Rule 58 judgment will not prohibit appellate review. Bankers Trust Co. v. Mallis, 435 U.S. 381, 382-88, 98 S.Ct. 1117, 1118-22, 55 L.Ed.2d 357 (1978); Kunkel v. Continental Casualty Co., 866 F.2d 1269, 1272 n. 3 (10th Cir.1989). In this case, the district court permanently enjoined Defendant from taxing the value of Plaintiff’s computer software. Because the district court's order granted Plaintiff its requested relief and effectively terminated the action, we may properly exercise appellate jurisdiction over this appeal under § 1291.