**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**The FISHER–OTIS COMPANY, INC., and
Roy Fisher, Jr., Defendants-
Appellants,**

**Raymond H. Coit, Defendant.**

**No. 73–1367.**

United States Court of Appeals,
Tenth Circuit.

Argued March 18, 1974.

Decided May 14, 1974.

Rehearing Denied June 11, 1974.

**1147**

Larry G. Gutterridge, Atty., Dept. of Justice (Wallace H. Johnson, Asst. Atty. Gen., Richard A. Pyle, U. S. Atty., and Edmund B. Clark, Atty., Washington, D. C. on the brief), for plaintiff-appellee.

A. Camp Bonds, Jr., Muskogee, Okl., for defendants-appellants.

Before LEWIS, Chief Judge, DURFEE*, Senior Judge, and BARRETT, Circuit Judge.

DURFEE, Senior Judge.

The United States instituted this action for declaratory judgment [1] to establish its rights, under a flowage easement deed, in certain tracts of land owned by defendants, the Fisher-Otis Co., Inc., Roy Fisher, Jr., and Raymond H. Coit. Defendants appeal[2] from an adverse decision in the United States District

* Honorable James R. Durfee, Senior Judge, United States Court of Claims, sitting by designation.

1. Pursuant to 28 U.S.C. § 2201 (1970).

2. Defendant Raymond H. Coit has not joined in this appeal.

Court for the Eastern District of Oklahoma declaring that the Government easement prohibits the use of landfill and the construction and/or maintenance of any structures for human habitation within the flowage easement area. We affirm.

The pertinent facts may be simply stated:

The United States acquired the flowage easement from Phil and Elizabeth Huls by recorded deed of March 5, 1960. The easement deed covered that portion of certain tracts of land, situated in Pittsburg County, Oklahoma, lying below 602 feet mean sea level (m. s. l.), and it granted the Government the perpetual right, power, privilege and easement occasionally to overflow, flood and submerge the lands in question as may be required in connection with the operation and maintenance of the Eufaula Reservoir on the Canadian River. The deed included a covenant running with the land, which provided, in pertinent part, as follows:

> * * * no structures for human habitation shall be constructed or maintained on the above-described land, and further, that no structures of any type * * * shall be constructed or maintained on the above-described land except such as may be approved in writing by representatives of the Government in charge of said project.

Defendants herein are successsors in title to the ownership of the property in question.[3]

The complaint alleges that defendants have placed (or have permitted to be placed with their knowledge and consent) earth fill within the flowage easement areas so as to raise the surface elevation of the land above 602 feet m. s. l. The United States contends that, as a matter of law, the use of earth fill to raise the elevation of land below 602 feet m. s. l. to above that

level cannot circumvent the flowage easement prohibition against construction for human habitation on land with a pre-fill elevation below 602 feet m. s. l. The United States further contends that the use of such landfill is, of itself, in violation of its easement permitting it occasionally to overflow, flood and submerge the land covered thereby.

Defendants, by their answer, generally deny the allegations of the complaint, and specifically deny any encroachment of the flowage easement as claimed by plaintiff.

A pretrial conference was held on August 28, 1972. Subsequently, on September 6, 1972, the District Court entered a pretrial order which provided, in pertinent part, as follows:

> After full discussion, it was agreed that prior to proceeding further in the case a determination by the court should be made as to the rights of the parties under the flowage easement purchased by the government in 1960 in the area here involved. This determination should include a decision by the court as to what constitutes structures within the meaning of the easement and to what extent, if any, the defendants may encroach upon the flowage easement area without materially interferring [sic] with the hydrology of the lake. * * *

The pretrial order provided for the submission of briefs by the parties relative to these legal issues, and further provided as follows:

> After the legal rights of the parties have been determined, there remains to be resolved the question of the location on the ground of 602 MSL.

After considering the briefs submitted by the parties, the District Court—having found that defendants had placed, or had permitted to be placed with their knowledge and consent, earth fill within the flowage easement area so as to raise the surface elevation of the land above

---

3. Defendants do not dispute that they hold title to the property in question subject to the Government's easement; rather, they contest the right of the Government to impose the limitations involved in this suit upon their use of the subject lands.

602 feet m. s. l.—entered judgment on March 14, 1973, in favor of the United States. The court ruled, *inter alia,* that the positive and negative rights included in the flowage easement acquisition by the United States are valid and binding on defendants as successors in title to Phil and Elizabeth Huls; that, pursuant to the flowage easement, defendants are prohibited from using landfill within the flowage easement areas having elevation below 602 feet m. s. l.; that defendants are prohibited from constructing and/or maintaining any structures for human habitation within the flowage easement areas other than those that were in place on September 6, 1972; and that defendants are not required to remove landfill that was in place on or before September 6, 1972, but are restricted from building structures for human habitation within areas so filled. It appears that neither party filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, but that the District Court entered judgment for plaintiff *sua sponte.*

Defendants appeal following the denial, on April 2, 1973, of their motion for new trial. They contend (1) that they were denied a trial with respect to controverted factual issues, in violation of the Fifth Amendment to the Constitution; (2) that the District Court's entry of judgment on its own motion deprived them of due process safeguards of notice and the right to a hearing normally accorded the summary disposition of cases under Rule 56 of the Federal Rules of Civil Procedure; and (3) that there is no basis in law for the judgment of the District Court. Defendants seek reversal and remand for trial.

I

The first question for consideration is whether or not there are genuine issues as to any material fact upon which the outcome of this litigation depends, so that entry of judgment for plaintiff was improper. Defendants claim that they were denied a trial with respect to controverted factual issues, in violation of the Fifth Amendment to the Constitution.

■■■■ Of course, if there are genuine issues of fact, the granting of summary judgment in a declaratory judgment suit is not in order. United Mine Workers of America, District 22 v. Roncco, 314 F.2d 186 (10th Cir. 1963). Defendants maintain, first of all, that entry of judgment was improvident in the absence of a specific finding as to the location on the ground of the flowage easement. We do not think, however, that a determination of the exact acreage and precise location of the flowage easement is material to the resolution of the legal issues raised in this lawsuit. Plaintiff brought this action only to obtain declaratory relief with respect to issues of law, specifically whether landfilling and construction are prohibited by the terms of the Government's easement deed. Plaintiff requests neither injunctive relief nor an award of money damages.[4] If the Government had demanded removal of landfill and structures already in place, or if it had sought to enjoin future landfilling and construction within the flowage easement area, then any dispute between the parties as to the ground location of the easement would be a pertinent factual issue for trial, the resolution of which would be necessary before entry of judgment granting such relief. But all the United States asks for in this lawsuit is a determination of the legal relations between the parties, that is, a declaration of its rights under the flowage easement deed. A request for relief may be so limited under the Declaratory Judgment Act, and any further necessary and proper relief based upon the declaratory judgment and any additional facts which might be necessary to support such relief can be sought at a later time. 28 U.S.C. § 2202; Edward B. Marks Music

---

4. The fact that plaintiff might have brought an action seeking injunctive or other relief does not preclude a judgment for declaratory relief when it is otherwise appropriate. 28 U.S.C. § 2201; Rule 57, Fed.R.Civ.P.

Corp. v. Charles K. Harris Music Pub. Co., 255 F.2d 518 (2d Cir. 1958). The exact ground location of the flowage easement is not an issue of material fact upon which the outcome of this litigation depends, and accordingly, the fact that the issue remains unresolved is no bar to the entry of judgment. Zampos v. United States Smelting, Refining and Mining Co., 206 F.2d 171 (10th Cir. 1953); Broderick Wood Products Co. v. United States, 195 F.2d 433 (10th Cir. 1952).

■ The District Court specifically found that defendants used landfill to raise the elevation of surface lands within the flowage easement area, and further that defendants built structures for human habitation on the areas so raised. Defendants object to these findings claiming that they specifically denied them in their answer, that they at no time made any admission of such conduct, and that there was no other evidence or proceeding upon which the District Court could have based such findings. We agree with defendants that the record does not support these specific findings of the District Court, and accordingly, that they were inappropriately made. The Government is willing to concede that the District Court's determinations with respect to defendants' past conduct are not binding and that they have no legal effect.[5] But, the Government argues, it was not necessary in any event to resolve these factual issues in order to enter judgment herein. We agree with the Government's position that the factual issues as to defendants' past conduct with respect to landfilling and building of structures are not material to the legal issues raised or to the relief sought by plaintiff in this suit. Again, plaintiff only seeks a declaration of its rights under the flowage easement deed, and does not request removal of any landfill or structures which might have been placed in the

past by defendants within the easement area. The fact that there remains unresolved an issue as to what extent, if any, defendants previously used landfill or built structures does not prevent the entry of judgment herein. Zampos, supra; Broderick Wood Products Co., supra.

We therefore conclude that the factual issues which defendants argue require remand for trial are not genuine issues of material fact that would preclude the entry of judgment in this cause. This result is most persuasively supported by the fact that, at the pretrial conference, the parties agreed that prior to proceeding further in the case a determination by the court should be made as to the rights of the parties under the flowage easement deed. Defendants specifically agreed that the court should at that point determine what constitutes structures within the meaning of the easement deed, and to what extent, if any, defendants may encroach upon the flowage easement area without materially interfering with the hydrology of the lake. Since the parties agreed to the determination of these legal issues, they obviously assumed or conceded that there was a body of undisputed facts before the court upon which the determination of the relevant legal issues could rest. The resolution of these precise legal questions was the sole relief plaintiff sought by the institution of this declaratory judgment action, and the agreement of the parties to submit these issues to the District Court brought the lawsuit to the stage that, upon their resolution, entry of judgment would be appropriate.

At this point in the argument defendants contend that if the Government cannot uphold its allegations with respect to defendants' past conduct (i. e., landfilling and construction), then no "actual controversy" exists between the parties upon which to base an action for declaratory judgment.[6]

5. Plaintiff's Brief, p. 8.

6. The Declaratory Judgment Act, 28 U.S.C. § 2201, limits declaratory judgments to "cases of actual controversy" in recognition of the fact that Federal judicial power extends, under Article III, Section 2 of the Constitution, only to "cases" or "controversies."

Defendants misconstrue the requirement that a proceeding for declaratory judgment be based upon an actual controversy. The essential distinction between a declaratory judgment action and an action seeking other relief is that in the former no actual wrong need have been committed or loss have occurred in order to sustain the action. Johnson v. Interstate Transit Lines, 163 F.2d 125 (10th Cir. 1947). The purpose of the Declaratory Judgment Act is to settle actual controversies before they ripen into violations of law or a breach of duty. Scott-Burr Stores Corp. v. Wilcox, 194 F.2d 989 (5th Cir. 1952). It is not necessary for the maintenance of this action, therefore, for plaintiff to have proven that defendants placed landfill or structures within the flowage easement area in the past. The test for determining whether or not there is an actual controversy contemplated by the Declaratory Judgment Act is the familiar one stated in Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826, 829 (1941): "Basically, the question in each case is whether * * * there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Accord,* Golden v. Zwickler, 394 U.S. 103, 108, 89 S.Ct. 956, 959–960, 22 L. Ed.2d 113, 118 (1969); Lake Carriers' Assoc. v. MacMullan, 406 U.S. 498, 506, 92 S.Ct. 1749, 1755, 32 L.Ed.2d 257, 266 (1972). Such a controversy is presented in this case. The complaint alleges not only that defendants have placed earth fill within the flowage easement area in the past, but it also alleges that defendants presently contend that such raising of the surface elevation removes that portion of the land from the flowage easement, and that structures for human habitation can be constructed on such filled land. The record and the briefs filed in this court substantiate that defendants assert a present claim of right to landfill within the flowage easement area, which plaintiff contends is in direct violation of the conditions and general intent and purpose of the easement deed. The facts herein alleged, under all the circumstances, establish the existence of a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

## II

Defendants next contend that the District Court erred in entering judgment *sua sponte* because summary judgment is authorized under Rule 56, Federal Rules of Civil Procedure, only upon a motion filed by a party and a hearing granted upon appropriate notice; defendants argue that the summary disposition of their case denies them due process of law in violation of the Fifth Amendment to the Constitution.

Rule 56, Federal Rules of Civil Procedure, specifically provides that a party seeking to obtain a declaratory judgment may move for summary judgment in his favor upon all or any part of his claim. It appears that Rule 56 contemplates that the parties be afforded a hearing before a motion for summary judgment is ruled upon.[7] The fact that there was no oral hearing in this case, however, is no grounds for defendants to claim deficiency of due process. We point out, once again, that the parties agreed at the pretrial conference to submit the legal issues ultimately in dispute to the District Court for final determination. They filed briefs in support of their arguments. By joining in the submission of the ultimate legal issues herein involved to the District Court for resolution, defendants assumed or conceded that, as to the resolution of those legal issues, there were no

---

7. Rule 56(c) provides that a motion for summary judgment " * * * shall be served at least 10 days before the time fixed for the hearing." It is further provided in that paragraph of the rule that the adverse party " * * * prior to the day of hearing may serve opposing affidavits."

essential facts in dispute. Defendants have addressed the issue of whether there are any genuine issues of material fact for trial in their briefs filed in this court, and they have had the opportunity to convince us of their position at oral argument. We have concluded, however, that there are no factual issues which would require a remand for trial (see discussion, *supra*).

The conduct of plaintiff and defendants shows agreement by the parties to have the ultimate legal issues in this lawsuit resolved by the District Court, and the case was thereby placed in such a posture that the filing of a motion for summary judgment would have been a mere formality. Had plaintiff filed the appropriate motion, it would have been entitled to summary judgment. In view of the character of the relief sought in this case, the agreement of the parties to submit the legal issues involved to the District Court for final determination, and the fact that there existed no genuine issue of material fact upon which the outcome of this litigation depends, the failure of plaintiff to file a motion for summary judgment does not preclude the entry of summary judgment in its favor. *Cf*. Local 33, International Hod Carriers Building and Common Laborers' Union of America v. Mason Tenders District Council, 291 F.2d 496 (2d Cir. 1961); Thompson v. New York Central Railroad, 361 F.2d 137, 144 (2d Cir. 1966); Walters v. Dunlap, 250 F. Supp. 76, 81 (W.D.Pa.1966), aff'd 368 F.2d 118 (3d Cir. 1966); 6 Moore, Federal Practice, ¶ 56.12 (2d ed. 1974).

### III

Finally, defendants object to the District Court's ruling on the merits.

The plain language of the easement deed provided that " \* \* \* no structures for human habitation shall be constructed or maintained \* \* \* " within the flowage easement areas, and the District Court properly ruled that the building of such structures contravenes the terms of the easement. There is nothing ambiguous about this provision of the deed, and defendants' arguments to the contrary are without merit.

Defendants also contest that part of the declaratory judgment which holds that the easement deed prohibits the use of landfill within the flowage easement areas. They claim the right to place a "moderate amount" of landfill on the land subject to the easement. We are not sure what defendants mean by a "moderate amount" of landfill. In any event, it is clear that the Government's flowage easement prohibits the use of landfill to raise the surface elevation of land below 602 feet m. s. l. to above that level in order to build structures for human habitation. Any such claimed right, carried to its logical conclusions, would allow the removal of all lands presently within the easement areas, and consequently would permit the destruction of the Government's easement. The United States acquired the flowage easement in order to be able to overflow, flood and submerge the lands in question in connection with its operation and maintenance of the Eufaula Reservoir on the Canadian River. The use of landfill to raise the elevation of property to above 602 feet m. s. l., thereby removing it from the flowage easement area, is a material interference with the Government's rights under the flowage easement deed. In our view, such landfilling violates, in general, the overall intent and purpose of the Government's easement. See United States ex rel Tennessee Valley Auth. v. Hughes, 408 F.2d 619 (6th Cir. 1969). Defendants are concerned that the declaratory judgment prohibits their use of landfill below 602 feet m. s. l. for the purpose of providing lateral support to the property they own adjoining the flowage easement areas. This issue need not concern us because the Government concedes that the declaratory judgment does not hold that the easement bars the use of sodding, landscaping and erosion control referred to by defendants.

For all the foregoing reasons, the judgment of the District Court is

Affirmed.