PUBLIC SERVICE COMPANY OF
NEW MEXICO, a New Mexico
corporation, Petitioner,

v.

CITY OF ALBUQUERQUE, a New
Mexico municipality, Respondent,

State of New Mexico, ex. rel. Attorney
General Hal Stratton, Respondent in
Intervention.

Civ. No. 90–0084 JC.

United States District Court,
D. New Mexico.

Feb. 6, 1991.

William B. Keleher, Richard B. Cole, Arthur O. Beach, Thomas C. Bird, Keleher & McLeod, P.A., Albuquerque, N.M., for petitioner.

David S. Campbell, Margot Steadman, Albuquerque City Atty., Albuquerque, N.M., Marvin S. Cohen, Randall S. Yavitz, Sacks, Tierney, Kasen & Kerrick, P.A., Phoenix, Ariz., for respondent.

Thomas S. Udall, Nann Houliston, Atty. Gen. of New Mexico, Santa Fe, N.M., for respondent in intervention.

James C. Martin, Lee W. Huffman, New Mexico Public Service Com'n, Santa Fe, N.M., for petitioner for intervention.

## MEMORANDUM OPINION AND ORDER

CONWAY, District Judge.

THIS MATTER comes on for consideration of Respondent City of Albuquerque's Motion to Dismiss, Respondent in Intervention State of New Mexico's Motion to Dismiss, and the New Mexico Public Service Commission's (NMPSC) Motion to Intervene. The Court, having reviewed the memoranda of the parties, and being otherwise fully advised in the premises, finds that Respondent City of Albuquerque's Motion to Dismiss is well-taken and will be granted. Respondent in Intervention's Motion to Dismiss and NMPSC's Motion to Intervene will be denied as moot.

### A. Background

The Public Service Company of New Mexico (PNM) filed its Petition for Declaratory Judgment in this Court on January 25, 1990. PNM's Petition sets forth the following facts and allegations. PNM is a public utility generating, transmitting and distributing electricity within specific service areas in the State of New Mexico. Respondent City of Albuquerque is located within one of PNM's service areas. Since 1917, PNM has supplied electricity to consumers within the City of Albuquerque, and PNM continues to supply such electricity pursuant to a Franchise from the City of Albuquerque by virtue of Albuquerque City Ordinance No. 8–1967. This Franchise

is limited to 25 years and expires on or about January 23, 1992.

It is apparent to any reasonably observant individual that a vast network of poles, wires, insulators and other equipment is necessary to distribute electricity from a utility's generating plants to its customers. Over the course of this past century, PNM has installed such self-styled "transmission and distribution assets" upon the alleys, streets and other public places within the City of Albuquerque. PNM estimates that the value of its "integrated system" for generating and distributing electricity is in excess of two billion dollars ($2,000,000,-000).

In its Petition for Declaratory Judgment PNM alleges that an actual controversy exists between it and the City of Albuquerque as to the effects of the expiration of the Franchise Ordinance on the ownership of transmission and distribution assets installed by PNM on property owned by the City of Albuquerque.[1] By Resolutions dated June 6, 1988 and March 6, 1989, the Albuquerque City Council has directed the City Attorney and its legal department to undertake research concerning the question of ownership upon expiration of the Franchise Ordinance of the transmission and distribution assets installed by PNM on Albuquerque city property. PNM alleges that this controversy concerning ownership of the transmission and distribution assets upon expiration of the Franchise Ordinance is "impede[ing] the progress of negotiating a renewal of the Franchise Ordinance." Petition for Declaratory Judgment at ¶ 16. Therefore, PNM seeks a declaration from this Court "to the effect that the expiration of the Franchise will not vest title to the PNM Assets in the City and that the City, its officers, representatives, agents, employees or attorneys must not exercise ownership over the PNM assets without first paying to PNM full and adequate com-

---

**1.** It should be noted that the value of the assets about which PNM contends there is a controversy concerning ownership is less than the value of the "integrated system" alleged by PNM to be in excess of two billion dollars. PNM's valuation includes "plant, lines and system used to generate, transmit and distribute electricity, which plant, lines and system are situated upon easements or lands held by PNM and obtained or owned by PNM." Petition for Declaratory Judgment at ¶ 9. No alleged controversy exists concerning ownership of these assets upon termination of the Franchise Ordinance.

pensation for the PNM Assets...." Petition for Declaratory Judgment ¶ at 23A. PNM also asks the Court to enter "[a]n injunction barring the City ... from initiating a proceeding in any other forum directed at establishing ownership rights to the PNM Assets in the City upon expiration of the Franchise." Petition for Declaratory Judgment at ¶ 23B.

Respondent City of Albuquerque now moves this Court to dismiss PNM's Petition for Declaratory Judgment. As grounds for its motion to dismiss, the City asserts several alternative theories. First, the City argues that this Court lacks subject matter jurisdiction both because the issues presented are not yet ripe and thus present no case or controversy within the meaning of Article III of the United States Constitution, and because PNM's petition presents no substantial federal question. Second, the City contends that even if the case is justiciable and the court has jurisdiction, the Petition should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Finally, the City insists that should the Court not find that dismissal is warranted under either of these theories, it should nevertheless exercise its discretion to decline to hear this case. In light of the Court's determination that PNM's Petition for Declaratory Judgment is not ripe for determination and that, alternatively, the Court will not exercise its discretion to hear the petition, the Court has no occasion to consider the City's other arguments in support of its Motion to Dismiss.

### B. Standard for Declaratory Judgment

Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure, this Court, "[i]n a case of actual controversy within its jurisdiction ... upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "Whether or not to entertain a justiciable declaratory judgment action is a matter committed to the sound discretion of the trial court." *Kunkel v. Continental Casualty Co.*, 866 F.2d 1269, 1273 (10th Cir. 1989).

The decision whether or not to entertain a petition for declaratory judgment is thus two-fold. First, as with any action pending before this Court, the Court must determine that it has the requisite subject matter jurisdiction. Even if it is established that the petition presents a justiciable action within the subject matter jurisdiction of the Court, however, the Court must additionally decide whether or not to exercise its discretion and hear the action.

### c. Subject Matter Jurisdiction: Ripeness

#### 1. Overview

Federal courts are prohibited by Article III of the United States Constitution from deciding "abstract, hypothetical or contingent questions." *Alabama State Federation of Labor v. McAdory*, 325 U.S. 450, 461, 65 S.Ct. 1384, 1389, 89 L.Ed. 1725 (1945). Article III's grant of subject matter jurisdiction extends only to "cases" and "controversies." Of course, the distinction between a justiciable actual controversy and a merely hypothetical dispute not yet ripe for decision is often less than obvious. The question becomes even more nettlesome in the context of an action seeking a declaratory judgment, since the purpose of the latter is to "settle actual controversies before they ripen into violations of law or a breach of duty." *United States v. Fisher–Otis Company, Inc.*, 496 F.2d 1146, 1151 (10th Cir.1974).

In *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941), the United States Supreme Court said that in each case the test is basically "whether ... there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 273, 61 S.Ct. at 512. More recently, in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), the Supreme Court articulated a more focussed inquiry with which to make a ripe-

ness determination. "The problem is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issue for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 149, 87 S.Ct. at 1515. The Tenth Circuit has said that, "[w]hether or not a question is ripe for decision requires an examination of 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *ACORN v. Tulsa,* 835 F.2d 735, 739 (10th Cir.1987). In undertaking this analysis the Court must be mindful of the admonition that, in all cases involving issues of justiciability, "restraint should be exercised to avoid rendition of an advisory opinion." *McCombs v. Federal Energy Regulatory Commission,* 705 F.2d 1177, 1181 (10th Cir.1980), *vacated, McCombs v. Federal Energy Regulatory Commission,* 710 F.2d 611 (10th Cir.1983).

PNM directs the Court's attention to a number of facts which, it contends, indicate that an actual controversy exists in this case. First, PNM points to the two resolutions passed by the Albuquerque City Council directing the city's attorney to research the issue of ownership of the transmission and distribution assets upon termination of the Franchise. Second, PNM also points to "a number of other resolutions" considered, but apparently not passed, by the Albuquerque City Council "relating to PNM and electric utility matters and the various options that may be available to the City upon expiration of its Franchise Ordinance." Petition for Declaratory Judgment at ¶ 13. Furthermore, PNM notes that "certain citizens and elected public officials," Petition for Declaratory Judgment at ¶ 14, have suggested that the City seek its own declaratory judgment concerning this matter. Finally, PNM contends that the numerous news stories concerning this issue and the overall public concern indicate that an actual controversy between PNM and the city exists. Petition for Declaratory Judgment at ¶¶ 14, 20, and 21. PNM does not allege that any duly empowered entity of the Albuquerque city government has declared that the City now owns, or will own upon expiration of the Franchise, the property at issue in this case.

Nor does PNM contend that the City has actually attempted to exercise any ownership rights over this property through an act of the City Council or a duly authorized administrative or executive agent.

**2. Fitness for Judicial Review**

The extent to which a controversy is "fit for judicial review" depends, in part, upon whether or not the development of a more precise factual or legal record will materially benefit the decision making process. Often, contingent controversies are rendered hypothetical and moot by subsequent factual or legal developments. This is especially so where a petition for declaratory judgment seeks relief under some clause of the United States Constitution. *See Illinois ex. rel. Barra v. Archer Daniels Midland Co.,* 704 F.2d 935, 943 (7th Cir.1983) and Wright, Miller and Cooper, 13A *Federal Practice and Procedure: Civil 2d* § 3532.3. Furthermore, especially in the context of constitutional claims, the issue of whether or not an alleged controversy is fit for judicial review cannot be entirely separated from the substantive nature of the claim. Compare *Keyishian v. Board of Regents,* 385 U.S. 589, 604, 87 S.Ct. 675, 684, 17 L.Ed.2d 629 (1967) (permitting preenforcement First Amendment challenge to law regulating speech) with *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City,* 473 U.S. 172, 186, 105 S.Ct. 3108, 3116, 87 L.Ed.2d 126 (1985) (Fifth Amendment just compensation claim not ripe until all state procedures for relief utilized); *see ACORN v. Tulsa,* 835 F.2d 735, 739–40 (10th Cir. 1987); *see also,* Nichol, *Ripeness and the Constitution,* 54 U.Chi.L.Rev. 153 (1987).

The parties to this alleged controversy vigorously dispute the precise nature of PNM's claim for relief. The City treats the complaint as seeking redress for a taking or potential taking. In its Petition for Declaratory Judgment, PNM asserts that its "ownership of the PNM Assets is protected by the Fifth and Fourteenth Amendments to the Constitution of the United States. Any effort by the City to exercise any right of ownership or dominion over the PNM Assets ... would amount to an unconstitu-

tional taking of private property in disregard of the due process" clause of the United States Constitution. Petition for Declaratory Judgment at ¶ 19. As relief, PNM seeks a declaration that "the expiration of the Franchise will not vest title to the PNM assets in the City," and that an assertion of such rights by the City requires "adequate compensation." Petition for Declaratory Judgment at ¶ 23A.

In its response in opposition to the City's Motion to Dismiss, PNM insists that, in spite of the language in its petition about "adequate compensation" and action amounting to an "unconstitutional taking," it "is not seeking redress for a taking." Public Service Company of New Mexico's Response in Opposition to Motion to Dismiss at 18. At page 13 of its Response PNM states that "PNM's suit for declaratory relief rests directly upon due process rights ...," id. at 13, and at page 15 PNM states that "PNM's due process claim presents the essence of its action...." Id. at 15. PNM does not further explain the nature of this alleged due process claim. At yet another paragraph in its Response in Opposition to Motion to Dismiss PNM asserts that it "seeks a declaration of its property rights under the Fifth and Fourteenth Amendments of the Constitution, not a remedy for an actual deprivation of property." Id. at 19.[2]

■ Given PNM's many—often inconsistent—statements concerning its own claims, the Court is hardly surprised by the respondent's difficulty in characterizing the nature of PNM's petition for relief. To the Court, PNM appears—at one time or another—to have advanced three different theories as grounds for relief. First, and originally in its petition, PNM sought relief under the Fifth Amendment's takings clause. Regardless of PNM's later disavowal of this theory, the Court will analyze the ripeness question as it pertains to this theory. Second, PNM asserts a cause of action under the Due Process clause of the 14th Amendment. Third, PNM apparently seeks a declaration of its *property* rights as established by the Fifth and Fourteenth Amendments.[3]

■ The law is well settled that claims under the takings clause of the Fifth Amendment are not ripe until the plaintiff has been denied compensation. "The Fifth Amendment does not proscribe the taking of property; it proscribes the taking of property without just compensation." *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, supra,* 473 U.S. at 194, 105 S.Ct. at 3120. That a claim based on the takings clause is premature in this case is obvious, and may explain PNM's disavowal of this theory in its later pleadings. The State of New Mexico provides an elaborate and adequate procedure for seeking just compensation. *See* N.M.S.A. § 42A–1–1 et. seq. (1978). Until PNM has used this procedure and been denied just compensation, any takings claim would be premature. *See Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, supra,* 473 U.S. at 195, 105 S.Ct. at 3121. Of course, PNM cannot avail itself of these procedures at this time because the Albuquerque city government has, as yet, taken no action contrary to PNM's asserted property interests.

■ The due process claim suffers from similar difficulties. The Due Process clause of the 14th Amendment to the Con-

---

**2.** At page 13 of its response PNM states that "PNM's Petition alleges that the Fifth and Fourteenth Amendments to the Constitution protect PNM's ownership of the distribution assets.... PNM asks the court to confirm PNM's constitutional rights in its property and to remove doubts created by the 'fixture' theory." Public Service Company of New Mexico's Response in Opposition to Motion to Dismiss at 13.

**3.** This last theory will not be analyzed under the ripeness doctrine because it fails to state a valid claim for relief under federal law. Neither the

Fifth nor Fourteenth Amendments invest an individual with enforceable substantive property rights. Rather, these amendments provide procedural guarantees against state action working deprivations of property interests established by some independent source such as state law. "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

stitution imposes both substantive and procedural limitations on state action. *See Daniels v. Williams*, 474 U.S. 327, 337, 106 S.Ct. 662, 677, 88 L.Ed.2d 662 (1986) (Justice Stevens, concurring). Fundamentally, however, the Due Process clause protects citizens from deprivations of either life, liberty or property. "The Fourteenth Amendment *protects only against deprivations* 'without due process of law.'" *Parratt v. Taylor*, 451 U.S. 527, 537, 101 S.Ct. 1908, 1914, 68 L.Ed.2d 420 (1981) (emphasis added), *overruled in part by, Daniels v. Williams*, 474 U.S. 327, 330, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986). To state a claim for a due process violation the plaintiff must assert that he has been subjected to some deprivation without due process of law. *See Board of Regents v. Roth, supra*, 408 U.S. at 569, 92 S.Ct. at 2705. Here, however, as noted above, PNM itself asserts that it is not seeking redress for such a deprivation.

Nevertheless, for the purposes of this declaratory judgment action, we may assume that any action by the City will deprive PNM of its alleged property interest. As the United States Supreme Court has said, "[d]ue process, 'unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' '[D]ue process is flexible and calls for such procedural protections as the particular situation demands.'" *Mathews v. Eldridge*, 424 U.S. 319, 324, 96 S.Ct. 893, 897, 47 L.Ed.2d 18 (1976) (citations omitted). Thus, the next step in an analysis of a procedural due process claim requires the court to determine precisely what process is due the petitioners, and whether or not any process afforded by the City would be sufficient. Quite obviously it is impossible at this point, in the absence of any action by the City, to determine whether or not that action fulfills the requirements of the Due Process clause of the Fourteenth Amendment. *See Broderick v. di Grazia*, 504 F.2d 643, 645 (1st Cir.1974) (action for declaratory judgment that statement by Police Commissioner would deprive police officers of due process of law in future administrative disciplinary proceedings not ripe because whether there would be a denial of due process in such

proceedings presented a "virtually unanswerable" question: "[a] court could only guess at how [the statement] might be translated into practice"); *cf. Williamson County Regional Planning Commission v. Hamilton Bank, supra*, 473 U.S. at 199–200, 105 S.Ct. at 3123 (due process claim not ripe until after application of regulation at issue); *Unity Ventures v. County of Lake*, 841 F.2d 770, 775–77 (7th Cir.) (finding substantive and procedural due process claims not ripe under *Williamson County, supra*, stating "[w]e will not evaluate the adequacy of the procedures available to the plaintiffs before they have availed themselves of those procedures."), *cert. denied, Alter v. Schroeder*, 488 U.S. 891, 109 S.Ct. 226, 102 L.Ed.2d 216 (1988). Similarly, any substantive due process claims cannot be analyzed in the absence of specific state action capable of evaluation by this Court.

In arguing that, under these circumstances, the controversy here presented is fit for judicial review, PNM relies upon the Declaratory Judgment Act's underlying policy to permit a declaration of rights before a dispute ripens into an actual violation of law or breach of duty, especially as this policy applies to contingent injuries. *See Kunkel v. Continental Casualty Co., supra*, 866 F.2d at 1274–75. Nevertheless, the cases cited by PNM in support of its argument that this case is fit for review are mostly inapposite.

PNM cites *United States v. Fisher–Otis Company, Inc., supra*, 496 F.2d 1146 and *Delaney v. Carter Oil Co.*, 174 F.2d 314 (10th Cir.1949) for the broad proposition that "disputes about property rights ... present justiciable controversies." Public Service Company of New Mexico's Response in Opposition to Motion to Dismiss at 4. There can be no doubt, of course, that in certain circumstances disputes about property rights do present justiciable controversies. The *Fisher–Otis* court, however, itself indicated that the "record and the briefs filed in this court substantiate that defendants assert a present claim of right ... which plaintiff contends is in direct violation of" its property rights. *Id.* at 1151. As noted above, PNM does not allege that the City actually asserts that it

owns the assets at issue here. More significantly, as will be discussed below in greater detail, it is obvious from the facts of both *Fisher–Otis* and *Carter Oil* that in the absence of a judicial resolution of the questions presented in those cases the parties faced substantial hardships.

PNM's reliance on *Allendale Mutual Insurance Co. v. Kaiser Engineers,* 804 F.2d 592 (10th Cir.1986) and *Kunkel v. Continental Casualty Co., supra,* 866 F.2d 1269, for the proposition that the contingent nature of PNM's claim does not bar the requested relief is equally unpersuasive. In both cases the petitioners, insurers obligated to the respondents under insurance contracts, sought a declaration of rights under those contracts necessitated by the transpiring of events which directly implicated the duties set forth in the insurance policies. Moreover, it is well settled that contingent disputes involving liability under insurance contracts are sufficient to raise an actual controversy. *See* Wright, Miller & Kane, 10A *Federal Practice and Procedure: Civil 2d* § 2760. Determining whether an action for a declaratory judgment is ripe where the court is presented with uncertain contingencies requires a careful and often subtle analysis which precludes the wholesale application of principles derived from a specific class of cases to a dispute presenting questions involving different and more difficult problems. *See, e.g., id.* at §§ 3532.2, 3532.3, and 3532.4 (discussing the different ripeness analyses applied by courts faced with uncertain contingencies in different classes of cases).

In this case, the need to resolve the constitutional issues presented by PNM depends upon development of both the factual and legal record. Whether or not the constitutional issues will arise depends upon the future actions of the Albuquerque City Council. The Council may never take actions contrary to PNM's asserted property interest. If the Council does take some action, whether or not such action will interfere with PNM's constitutional rights under the Fifth and Fourteenth Amendments will depend entirely upon the nature of the action taken. "The need for more precise development to frame constitutional issues may arise with respect to state law

as well as to facts.... An extreme illustration of the need to await development of state law is reflected in the refusal to consider the validity of actions that have not yet been taken...." Wright, Miller & Cooper, 13A *Federal Practice and Procedure: Civil 2d* § 3532.3, at 149. Regardless of whether PNM's claim asserts an unconstitutional taking of private property, or a violation of the Due Process clause of the 14th Amendment, the issues presented under the Fifth and Fourteenth Amendments will be fit for judicial review only after the Albuquerque city government has taken some action, and only if the action taken somehow allegedly interferes with the petitioner's constitutional rights. *See Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, supra,* 473 U.S. at 194–195, 199–200, 105 S.Ct. at 3120–3121, 3123.

### 3. Hardship of Denying Review

Even where further development of the factual and legal record will dramatically increase an issue's fitness for judicial review, the hardship to the parties of denying immediate review may be such that the Court may exercise jurisdiction over the matter. This is not such a case, however.

PNM asserts that the controversy over the property rights at issue in this case is interfering with its ability to negotiate a new franchise with the City. Confronted with the fact that pursuant to Proposition 2, passed by the Albuquerque voters on November 1, 1989, the City can renew the franchise only after a process of competitive bidding, PNM refines its argument to contend that the uncertainty concerning ownership of the transmission and distribution assets is interfering with the potential bidding process. *See* Public Service Company of New Mexico's Response in Opposition to Motion to Dismiss at 10 ("[d]isputes about ownership of any portion of PNM's distribution system when the current franchise expires make the calculation and evaluation of franchise bids, including PNM's, impossible"). PNM makes no attempt to substantiate this assertion. The city itself does not seem to share this concern. Regardless of the accuracy of this claim, this

hardship is hardly sufficient to warrant immediate review of this otherwise hypothetical dispute. One noted commentator notes three paradigmatic situations in which delay may impose hardships on the parties sufficient to warrant review.

> Delay may [cause hardship] by imposing a continuing harm of uncertainty and expense flowing from doubt about the authority of legal rules governing relations between private parties; by failing to provide clear guidelines needed for effective long-term investment; or by failing to honor explicit legislative goals of certainty.

L. Tribe, *American Constitutional Law* (2d ed.) § 3–10, at 82. PNM's allegations of hardship do not fall within any of these situations.

The cases cited by PNM in support of the proposition that "disputes about property rights ... present justiciable controversies," Public Service Company of New Mexico's Response in Opposition to Motion to Dismiss at page 4, themselves indicate the extent of PNM's failure to demonstrate that a decision denying review of the issues here presented will cause hardship. In *United States v. Fisher–Otis Company, Inc., supra,* 496 F.2d 1146, the United States sought a declaration establishing its rights, under certain flowage easement deeds, in certain tracts of land owned by the defendants. The easement deed covered that portion of the identified land lying below 602 feet mean sea level, and granted the government the perpetual right to flood and submerge the lands. The defendants contended that the government's easement would be unenforceable if they used landfill to raise the land above 602 feet mean sea level. The facts in *Fisher–Otis* indicate that in the absence of a judicial resolution of the questions there presented each party faced substantial hardship. There, neither party could take action under its asserted rights without exposing itself to tremendous costs and potential liability. Similarly, the parties in *Delaney v. Carter Oil Co., supra,* 174 F.2d 314, faced substantial hardship in the absence of an immediate judicial resolution of the dispute. The Carter Oil Company was contractually obligated to distribute profits from the oil wells it operated to Delaney. A third party, Dille, filed a separate action against Delaney seeking to establish his interest in the oil and gas leases owned by DeLaney which, by contract with the Carter Oil Co., entitled Delaney to distributions from Carter Oil Company's profits. The Carter Oil company sought a declaratory judgment establishing the parties various rights, alleging that in effect the uncertainty of the ownership of Delaney's interest created by Dille's suit rendered uncertain Carter Oil's responsibilities. In the absence of a judicial declaration of the rights at issue, the petitioner in *Carter Oil Co.* would have been forced either to breach its contractual duties by inaction or risk breaching those duties by incorrectly distributing its income.

■ PNM fails to articulate just how the nature of the predicament it now faces is comparable to these situations. There is no indication in PNM's pleadings that any of its interests are put in jeopardy by the current state of affairs or that PNM is compelled to change its course of action in the absence of a judicial resolution of the issues here presented. Failure to immediately resolve the alleged controversy concerning ownership of the transmission and distribution assets will not cause PNM to suffer any substantial hardship. Should the City choose to act in the future in a manner allegedly inconsistent with PNM's property and procedural rights, PNM will have available to it a panoply of judicial remedies, the value of which will not be diminished because of any intervening delay.

### 4. Conclusion

In this case no part of the Albuquerque city government has even contended that the City owns the property at issue, much less taken any action inconsistent with PNM's asserted rights. Rather, the City Council, in fulfillment of its obligations to the citizens which it represents, has openly discussed and proceeded to investigate its rights under the laws of New Mexico. Under PNM's theory of the meaning of the ripeness requirement, a justiciable contro-

versy would arise any time a client discussed with his counsel the possibility that he had rights arguably inconsistent with those asserted by another party.

Furthermore, under PNM's analysis this Court cannot help but foresee in the future a myriad of cases alleging Fifth and Fourteenth Amendment violations every time a local or state government announces plans for a construction project that may involve the condemnation of private property. Simply put, such actions would be inconsistent with the Supreme Court's ruling in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, supra,* 473 U.S. 172, 105 S.Ct. 3108, and would unduly interfere with state and local administration of land use policies.

"Cases in which early legal challenges *are* held to be ripe normally present either or both of two features: significant *present* injuries produced by contemplation of a future event; or legal questions that do not depend for their resolution on an extensive factual background." L. Tribe, *American Constitutional Law* (2d ed.) § 3–10, at 80 (emphasis in original). PNM has not demonstrated that any delay in a resolution of the issues it here raises will cause it to suffer any significant hardship. No definitive action contrary to PNM's asserted property rights has been taken by the Albuquerque City Council or any duly authorized executive or administrative officer of the City. PNM's failure to demonstrate either a significant present injury or some hardship resulting from a delay in review, coupled with the contingent nature of the legal issues presented, issues which can best be resolved in the context of a more fully developed legal and factual record, force upon this Court the conclusion that there is no actual controversy presented by PNM's petition for a declaratory judgment and that therefore the case is not ripe for adjudication. The petition for declaratory judgment must, therefore, be dismissed for lack of subject matter jurisdiction.

### D. Discretionary Analysis

As noted above in Part B, the decision whether or not to entertain a petition for declaratory judgment has two parts. The Court has already concluded, under the first part of this analysis, that this Court lacks subject matter jurisdiction over this action because the petition does not present an actual controversy. Alternatively, this Court declines, even if it should have subject matter jurisdiction over the alleged controversy, to exercise its discretion to hear this petition.

PNM has expended an extraordinary amount of energy to convince this Court that its action presents on its face a constitutional question implicating the Fifth and Fourteenth Amendments. This effort nevertheless strikes the Court as disingenuous. Neither this Court nor, presumably, the City of Albuquerque would reject PNM's claim that the Fifth and Fourteenth Amendments to the United States Constitution protect its established property interests.

The real dispute presented by this case, and the dispute that PNM itself acknowledges has motivated it to seek this declaratory judgment, concerns whether PNM or the City owns the transmission and distribution assets. *See* Petition for Declaratory Judgment at ¶ 21. This question, of course, depends upon whether or not the "fixture theory" currently being studied by the city's attorneys will legally vest title to these assets in the City upon expiration of the Franchise.

Not until the state law question is resolved will PNM be able to properly state a claim under the Fifth and Fourteenth Amendments. Since there can be no real doubt that the Fifth and Fourteenth Amendments would protect PNM if under state law PNM owns the transmission and distribution assets, it seems to this Court that the only issue of genuine concern involves resolution of the state law property question.

This state law question need not be addressed by any court until the Albuquerque City Council takes action implicating the fixture theory. Yet PNM asks this Court, a federal court of limited jurisdiction, to enter an order under New Mexico law effectively pre-empting the City Council's

legislative process. The need for courts to hesitate to exercise such power has been explained by Justice Frankfurter:

Especially where governmental action is involved, courts should not intervene unless the need for equitable relief is clear, not remote or speculative....

Courts should avoid passing on questions of public law even short of constitutionality that are not immediately pressing. Many of the same reasons are present which impel them to abstain from adjudicating constitutional claims against a statute before it effectively and presently impinges on such claims.

*Eccles v. Peoples Bank of Lakewood Village*, 333 U.S. 426, 431, 432, 68 S.Ct. 641, 644, 645, 92 L.Ed. 784 (1948).[4]

The Court of Appeals for the Fifth Circuit followed Justice Frankfurter's admonitions in *Chacon v. Granata*, 515 F.2d 922 (5th Cir.), *cert. denied*, 423 U.S. 930, 96 S.Ct. 279, 46 L.Ed.2d 258 (1975). That case involved the annexation of outlying private lands by the City of San Antonio, Texas. The court upheld on review the District Court's decision to dismiss a complaint that the annexation was the first step in an unconstitutional plan to deprive the plaintiffs of their land without just compensation. The court noted that,

Where the legislative body has not yet acted, we must presume that when it does act it will respect rights guaranteed by the Constitution. The contours of the ordinances anticipated by plaintiffs cannot be predicted. Nor can it be foreseen how these laws will be interpreted judicially or applied administratively.

.   .   .   .   .

At present, ..., we discern no more than an allegedly ill-intentioned legislative action causing no cognizable injury.

.   .   .   .   .

"There is a wise and ancient doctrine that a court will not inquire into the motives of a legislative body or assume

them to be wrongful." *United States v. Constantine*, 296 U.S. 287, 299 [56 S.Ct. 223, 228, 80 L.Ed. 233] (1935) (Cardozo, J., dissenting).

*Id.* at 925, 926 & n. 5.

In *Young v. Klutznick*, 652 F.2d 617 (6th Cir.1981), *cert. denied, Young v. Baldrige*, 455 U.S. 939, 102 S.Ct. 1430, 71 L.Ed.2d 650 (1982), the Court of Appeals for the Sixth Circuit reversed the District Court's decision ordering the census bureau to withhold certification of the 1970 census until it had devised a statistically defensible means of adjusting the census figures to include uncounted segments of the population. The suit had been brought by the Mayor and City of Detroit. The Sixth Circuit determined that the case was not ripe for review, concluding that,

[e]ven if the ultimate response of the legislature could be predicted with some confidence, however, the fact that it is a representative, deliberative organ of state government rather than a private party must make this Court hesitate to exercise its power so as to narrow the range of solutions it might consider. As the Supreme Court has pointed out, the reasons a governmental body might provide for its actions are important in review of those actions.

*Id.* at 626.

This Court finds itself compelled to follow the sound reasoning advanced by these courts. A declaration by this Court, based primarily upon its interpretation of disputed state law, that any action by the Albuquerque City Council implicating PNM's alleged property interests will violate the United States Constitution would necessarily raise grave concerns about federal interference in state and local affairs. As the many articles attached as exhibits to PNM's pleadings indicate, the issues concerning the future of PNM's relationship with the City of Albuquerque are of great public interest and raise issues of

---

4. *Cf., Flast v. Cohen*, 392 U.S. 83, 94–95, 88 S.Ct. 1942, 1949, 20 L.Ed.2d 947 (1968). "Embodied in the words 'cases' and 'controversies' are two complementary but somewhat different limitations. In part those words limit the business of federal courts to questions viewed as capable of resolution through the judicial process. And in part those words define the role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to the other branches of government."

tremendous import to the State of New Mexico, the City of Albuquerque, and the citizens residing therein.

▮ Where, as here, the existence of an actual controversy depends upon uncertain contingencies directly within the control of a city's legislative body, and the issue presented is primarily one of disputed state law, this Court will exercise its discretion to decline to hear a petition for declaratory judgment.

*E. Conclusion*

PNM's Petition for Declaratory Judgment is not yet ripe for decision and therefore the Court lacks subject matter jurisdiction over this action. Alternatively, even if the Court does in fact have subject matter jurisdiction over this matter, the Court will exercise its discretion to refuse to hear the action.

Wherefore,

IT IS ORDERED, ADJUDGED AND DECREED:

1. The Respondent City of Albuquerque's Motion to Dismiss be, and hereby is, granted.

2. The Respondent in Intervention State of New Mexico's Motion to Dismiss be, and hereby is, denied as moot.

3. The New Mexico Public Service Commission's Motion to Intervene be, and hereby is, denied as moot.