# United States Court of Appeals
## For the Eighth Circuit

———————————————————

No. 21-1778

———————————————————

Russellville Legends LLC

*Plaintiff - Appellant*

v.

United States Army Corps of Engineers, Little Rock Division; Eric M. Noe,
Colonel, District Engineer, Little Rock District, U.S. Army Corps of Engineers;
United States of America

*Defendants - Appellees*

——————————

Appeal from United States District Court
for the Eastern District of Arkansas - Central

——————————

Submitted: December 14, 2021
Filed: January 28, 2022

——————————

Before LOKEN, ARNOLD, and STRAS, Circuit Judges.

——————————

ARNOLD, Circuit Judge.

Next to Arkansas Tech University in the City of Russellville, Arkansas, lies a tract of land where its owner, Russellville Legends, LLC, hoped to build student housing. That hope was dashed, however, when the U.S. Army Corps of Engineers refused to issue a permit for the project. Russellville Legends challenged the Corps's

refusal in the district court,[1] arguing, as relevant, that the Corps had arbitrarily and capriciously refused to grant the permit and that Russellville Legends didn't need a permit from the Corps in the first place. The district court rejected these contentions, and so Russellville Legends appeals. We affirm.

The tract at issue is bordered by two waterways—Prairie Creek to the east and its tributary, Engineers Ditch, to the west. Those two waterways meet at a confluence north of the tract. The university, meanwhile, lies on the other side of Prairie Creek. Downstream from the tract, the Corps maintains the Russellville Dike and Prairie Creek Pumping Station to protect the City of Russellville from flooding. That station pumps water from the Prairie Creek watershed into the backwaters of the Arkansas River and away from the city. Upstream from the station is a sump, consisting of at least 730 acres of low-lying land that collects and holds water. The water in the sump flows into the Prairie Creek watershed toward the pumping station. The idea is for excess water to gather in the sump and be pumped away from the city rather than have water overtake the city during a flood event.

To ensure itself the use of the sump, the Corps purchased flowage easements giving it the right to flood the land subject to those easements up to a certain elevation. The northern part of Russellville Legends's tract lies within the sump and is subject to one of these easements. That easement expressly provides "that no structures for human habitation shall be constructed or maintained on the land" subject to the easement, and Russellville Legends proposed to construct at least four apartment buildings on land subject to the easement. In addition, federal law makes it unlawful for anyone "in any manner whatever [to] impair the usefulness of any . . . work built by the United States . . . to prevent floods" unless the Corps permits it. *See* 33 U.S.C. § 408(a).

_____

[1]The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas.

The Corps refused to permit Russellville Legends's project because, among other reasons, the flowage easement does not allow construction of habitable structures and because the project, located "within the natural floodplain between the two primary floodways (Prairie Creek and Engineer Ditch) that drain into the" sump, "would create a significant obstruction to the natural flow of floodwater into the sump area" and therefore impair the usefulness of the Corps's pumping station. The Corps also pointed out that the project would "increase channel velocity and water surface elevations" and thus increase the city's flood risks.

Russellville Legends challenged these determinations by seeking a declaratory judgment from the district court stating that the Corps had "no authority to deny [its] right to construct the proposed Project that is located" above the easement's elevation line, that there is "no existing and effective civil works project of the United States for which [Russellville Legends] requires permission of the" Corps to alter or modify, and that the Corps "was arbitrary and capricious in its denial of permission for [Russellville Legends] to construct the proposed Project." The district court declined to enter a declaratory judgment and instead granted summary judgment to the Corps.

On appeal, as before the district court, Russellville Legends takes issue with the Corps's reliance on the flowage easement's prohibition of habitable structures because, it says, the proposed housing will be built completely outside (or more specifically, above) the easement's boundaries. How is that possible? Recall that the easement allows the Corps to flood land up to a certain elevation. Russellville Legends proposes to add dirt to the part of the property subject to the flowage easement on which apartments will be built to raise that land above the relevant elevation line and thus above the easement. Though landowners ordinarily cannot artificially elevate their land to escape a flowage easement, *see, e.g.*, *United States v. Fisher-Otis Co.*, 496 F.2d 1146, 1152 (10th Cir. 1974), Russellville Legends says it should be allowed to do so here because the Corps and the tract's previous owner had

an agreement that expressly allowed him to raise some of the land above the flowage easement by adding dirt.

We decline to decide the precise effect of that agreement because, even if Russellville Legends is right that the easement's prohibition of habitable structures is no longer in force, we think the Corps's decision can be upheld on the ground that the proposed construction would impair the usefulness of the Corps's pumping station. *See* 33 U.S.C. § 408(a). Whatever else it might be, the agreement isn't a basis for avoiding the need to obtain permission under § 408(a) in every circumstance because it explicitly states that it does not absolve the landowner of the responsibility to obtain necessary permits. Russellville Legends maintains, though, that it does not need § 408(a) permission from the Corps because the land it proposed to build on would lie outside the flowage easement after dirt is added to the property. Russellville Legends appears to assume that the flowage easement's limits mark the boundary of the Corps's pumping-station project and that no permit would be needed for construction outside the project area.

We don't see much of a connection between the flowage easement and the requirements of § 408(a). Even if the easement marks the boundary of the Corps's project, there is nothing in § 408(a) limiting its application to structures built on land containing a Corps project. That section prohibits a number of activities, and it is true that some of these prohibitions employ language that could arguably limit § 408(a)'s application to activities within the boundaries of a Corps project. For example, § 408(a) makes it unlawful for a person "to take possession of" certain works built by the United States, and perhaps a person could not "take possession of" a work without actually occupying the land on which the work lies. But we detect no similar, arguably limiting language in the part of § 408(a) involved here—the prohibition against "impair[ing] the usefulness" of a work "in any manner whatever." The breadth of those words is significant because someone could undoubtedly impair the usefulness of a Corps project from outside its boundaries. Suppose, for example, that

Russellville Legends proposed to place barricades alongside but just outside the easement's boundaries that prevented any water from flowing into the sump. We have no doubt that would impair the usefulness of the Corps's pumping station and its goal to mitigate flood risks to the City of Russellville, and thus such a plan should require Corps permission under § 408(a) even though the barricades lay outside the easement's boundaries.

Russellville Legends nonetheless directs us to agency guidance that the Corps has used when reviewing § 408 requests. *See* Engineer Circular No. 1165-2-220 (2018). That guidance says that it "must be applied to alterations proposed within the real property identified and acquired for the [Corps] project," as well as in some other circumstances not relevant here. *See id.* § 9.a(1)–(4). It then says that the guidance "should not be applied to proposed alterations occurring outside of the areas specified," *see id.* § 9.a(5), and so, Russellville Legends asserts, this must mean that no permit is needed for construction occurring outside the flowage easement. But that guidance also adverts to a situation, like the one here, where construction outside a Corps project impairs that project's usefulness. Russellville Legends points out that, according to the guidance, those situations "should be coordinated vertically through the appropriate Regional Integration Team (RIT) to determine the course of action," and that did not happen here. We don't see how that procedural failing diminishes the fact that, even according to this guidance, some proposed offsite activities might require Corps approval under § 408(a).

We note, moreover, that the district court found that at least part of Russellville Legends's proposed construction—a pedestrian bridge—would span Prairie Creek and thus be within the geographic boundaries of a different Corps project involving Prairie Creek. Though the parties do not direct us to much record information about this separate project, both the Corps and the district court mentioned it as yet another reason for denying approval. On appeal, Russellville Legends doesn't dispute the

Corps's or the court's findings on this score, and so it serves as an independent reason to conclude that a § 408(a) permit is required for the project.

We therefore hold that Russellville Legends was required to obtain the Corps's permission for its project under § 408(a).

Russellville Legends also maintains that, even if it was required to obtain the Corps's permission, the Corps acted arbitrarily and capriciously when it withheld its permission. The Administrative Procedure Act requires courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). To set aside an agency's decision as arbitrary or capricious, we must determine that the agency acted outside "the bounds of reasoned decisionmaking." *See Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2569 (2019).

An agency acts arbitrarily and capriciously when, among other things, it "offered an explanation for its decision that runs counter to the evidence before the agency." *See Nebraska v. U.S. E.P.A.*, 812 F.3d 662, 666 (8th Cir. 2016). Russellville Legends says that the Corps's findings about the effect of the proposed housing project run counter to the evidence before it.

Russellville Legends retained the assistance of an environmental consulting firm that submitted a report to the Corps on the effects that the proposed housing project would have on Corps projects. When it originally submitted its report to the Corps, the consultant explained that the proposed development's effect on water-surface elevation was "insignificant and will not impair the usefulness or operation of the" Corps's pumping-station project. The Corps responded with concerns about the consultant's methodology, so the consultant revised its calculations and forwarded them to the agency. As far as we can tell from the record, the consultant did not include an interpretation of the significance or effect of the updated data it provided.

-6-

Based on this revised information, the Corps determined that "the proposed alterations may reduce the sump capacity, which would increase flood heights in downtown Russellville." It also found that the housing complex "may increase channel velocities to as much as 5.30 ft./s," and that "[a] 100-yr flood places the apartments' first floors, parking lots, and exits underwater 2 to 3 feet." These water velocities and depths, the Corps concluded, "are a significant hazard that can deny escape," and so "[t]he proposal may threaten the lives and security of the people and property in Russellville in contradiction to the purpose of the" Corps's projects.

The Corps explained both before our court and before the district court how it calculated the figures it obtained using the information provided by Russellville Legends's consultant. For example, one chart the consultant submitted indeed shows that the channel velocity at one point along Prairie Creek would increase from 3.09 feet per second to 5.3 feet per second if the housing project were constructed. Those calculations also show that the water levels, in the event of a 100-year flood, would rise above the first floor of several buildings and over the parking lots and exits. We are therefore unconvinced by Russellville Legends's argument that the Corps pulled its determinations out of thin air.

We point out, moreover, that the Corps's final letter of denial did not include many of these specifics, alluding more generally to a "loss of sump capacity" and that "higher channel velocities and water surface elevations . . . would increase existing flood risks" to the city. It's not crystal clear whether the first denial of permission, which contained these specifics, or the Corps's final letter of denial, which it provided after Russellville Legends asked it to reconsider its first denial, constitutes final agency action. The parties don't address this difficulty, but it doesn't matter because we don't think the Corps acted arbitrarily or capriciously, either when it gave more specific figures initially or when it later restated its conclusions more generally.

Finally, the Corps gave other reasons for denying permission, such as the housing project's "significant obstruction to the natural flow of floodwater into the sump area," which Russellville Legends doesn't seem to contend was an arbitrary and capricious finding. It instead takes aim at the Corps's determinations regarding water-surface elevations and channel velocities, which we view as distinct, though possibly related, matters. We therefore hold that the Corps's denial was not arbitrary or capricious.

Affirmed.

_____